DANIEL MAY, Respondent, *against* THE NEW YORK SAFETY RESERVE FUND SOCIETY, Appellant.

(Decided January 3d, 1888.)

Plaintiff, relying upon representations of a soliciting agent of defendant, a benevolent assurance society, filed an application for membership therein, and received a certificate of membership reciting that " agents have no authority to make, alter, or discharge this contract, or to waive forfeitures." *Held*, that he was bound to take notice of the terms of the contract as contained in the certificate, and, having received and retained the same without objection, was bound by its terms, regardless of the prior representations of the agent.

Members of a benevolent society are bound to know the terms and conditions of the constitution and by-laws; and where they provide for amendments thereto, the members are equally bound by the amendments.

After forfeiture of membership in such a society by reason of non-payment of dues, the acceptance of dues by an officer of the society, expressly conditioned upon the passing of a satisfactory medical examination, is no waiver of the forfeiture, where the person fails to pass such examination.

A member of a benevolent society, induced to become such by the false representations of an agent, can only recover for such fraud the damages sustained thereby, which would be the amount of money paid out by reason of such false representations.

APPEAL from a judgment of the District Court in the City of New York for the Fifth Judicial District.

The facts are stated in the opinion.

*Henry C. De Witt*, for appellant.

*John M. Flynn*, for respondent.

BOOKSTAVER, J. — This action was brought to recover $164 from the defendant, an association formed for life-insurance and benevolent purposes, upon representations of an alleged contract made by defendant's agent.

Plaintiff claims the agent represented that, if he and his wife would both become members of this society, and would each pay, in advance, 10 cents every week, upon their general policies, and each, 25 cents quarterly to the benevolent fund of the society, in the event of the sickness of either, the sick one would receive from the benevolent fund of the society the sum of $3 a week; and also medical attendance without charge, during such illness; and that the money for each payment would be called for by the society's agent.

Plaintiff says that, relying on these representations, he agreed to the terms offered by the agent, on the 29th of May, 1885, and paid to him the initiation fee of 25 cents, and the first quarterly fee for the benevolent fund; and contends that he thereby became a member of the society, and entitled to receive the promised services and weekly allowance in case of illness.

This contention cannot prevail, for several reasons.

In the first place, there is no proof that the agent was authorized by the association to make the representations, or empowered to make the alleged contract. On the other hand, it is plainly stated, at the foot of the certificate of membership, afterwards delivered to the plaintiff, that "agents have no authority to make, alter, or discharge this contract, or to waive forfeitures." This notice he could not fail to see, had he looked at the contract at all. From the evidence, we gather that this agent was only authorized to solicit applications for membership, and to receive the weekly payments as they became due.

The receipt given by the agent, and relied on as showing that the plaintiff became a member on the 29th of May, plainly shows the contrary; for, at the bottom it says, "If the applicant for membership does not receive the certificate of membership in 15 days from the date of this receipt," he was to notify the home office of the association. The plaintiff could not be, at the same time, a member and an applicant for membership.

It further appears that, on the 29th of May, 1885, the very day he claims the contract was entered into with the agent, he made an application in writing for membership in the defendant's society, upon one of its blanks. By this application he agreed to be bound by the constitution and by-laws of the association, as they then existed, or might afterwards be altered or amended. The same blank provided for a medical examination of the plaintiff, which he subsequently submitted to, and in the course of which he made answers to the various questions put to him by the medical examiner, and signed the same.

From the constitution and by-laws, as they then existed, it appears (Art. 5 § 6) that it was the duty of the medical examiner "to examine all applications submitted to him for membership in the society, and deliver the applications, with his decision thereon, to the secretary." And from Art. 6 § 1, it appears that the executive committee were "charged with the approval or disapproval, as the case may be, of any and all applications for membership."

Afterwards, and on the 8th of June, 1885, the plaintiff was accepted as a member, and a certificate thereof was duly made out and delivered to him. This certificate he received and kept until the trial of this action; and, as far as the testimony shows, without objection on his part. That certificate, after reciting the consideration, declares that the defendant's association did thereby admit the plaintiff as a member of the society.

From all the foregoing facts, it is clear that the plaintiff did not become a member of the society until the issuing of the certificate by the society, and its acceptance by him; and that the contract contained in that certificate, and in the " benevolent certificate " issued to him at the same time, are the only binding contracts made between the parties.

One of the provisions of the " certificate of membership " is as follows: " This certificate of membership shall be void in case the above named dues (meaning the weekly dues) are not paid as above mentioned, or within thirty days thereafter " — that is, after the time they became due.

The society had a twofold object — to provide life insurance for its members, and a benevolent fund for the benefit of those contributing to it, in case of sickness. The certificate of membership merely admitted the party applying for it to membership in the society, and to a life-policy. No one not a member of the society could become a participant in the " benevolent fund; " and it was optional with the officers of the society, to admit or refuse the admission of the general members to membership in the benevolent fund, upon the payment of the fees required for that purpose (Art. 7 § 5).

The plaintiff was admitted into such membership, and a " benevolent certificate " was issued to him with his " certificate of membership." This certificate was also kept by the plaintiff without objection to any portion of it, and he never made complaint to any officer of the society that its provisions were not in accordance with the representations made to him by the agent. On the contrary, plaintiff paid his weekly dues under the terms of the " certificate of

membership," until May 16th, 1887; and his quarterly dues for the "benevolent fund," to January 3d, 1887. And after it was claimed the life policy had lapsed, he endeavored to have it revived; thus showing conclusively that he was entirely satisfied with the provisions of both contracts.

But, on plaintiff's behalf, it is urged that he did not know of the variance between the statements and alleged agreement made by the agent, and the contracts made by the society. If such was the case, it was his own fault, in not reading the certificates delivered to and kept by him; as the provisions contained in each are simply stated and without ambiguity. There is no possibility of mistaking their meaning. The "benevolent certificate" does not provide for medical attendance during sickness, nor for the payment of $3 weekly during such illness; but, by its terms, the society agrees, in the event of a member being sick, physically disabled, or in pecuniary distress, to pay him, out of the "benevolent fund," "such donations as the executive committee of the society may consider warranted by the circumstances of the case; provided, however, that the payments of the certificate of membership of said member shall not be in arrears." In accordance with this provision, the plaintiff was paid, from time to time, money, aggregating $20, during his illness. Subsequently, plaintiff neglected, for more than thirty days, from the 16th of May, 1887, to pay his dues to the society, and defendant claims he thereby forfeited his membership.

Plaintiff contends that it was agreed by the agent that such dues would be collected at his house, and that he was not in fault for not paying them, because no agent called to receive them. He also claims that, under the constitution and by-laws of the society, as they existed at the time he became a member, he was entitled to notice of such neglect; and that the policy could not be forfeited until thirty days after such notice (Art. 7 § 12), and that no such notice had ever been served on him.

The certificate of membership issued to him provides that these dues must either be paid at the office of the

society, or to an authorized agent; and that the certificate should be void, in case the dues were not paid at maturity, or within thirty days thereafter; and does not provide for the giving of notice on such failure.

We think the terms of the special contract should prevail over the constitution and by-laws, as it is not repugnant to them; but even if this were not so, the constitution and by-laws as amended April 27th, 1886, provide (Art. 7 § 11) "if any member neglects to pay his dues and assessments for more than thirty days after the same have become due and payable . . . then, and in every such case, such membership shall, at once, cease and terminate." This does not provide that any previous notice of default in the payment of dues shall be given before the policy is forfeited; and it is expressly written that, upon forfeiture of the certificate of membership, the member shall cease to participate in the benefits of the "benevolent fund."

The amended constitution and by-laws were erroneously excluded on the trial; for those in force, at the time plaintiff became a member, provided for amendments to them; and every person insured in a society like the defendant's becomes a member of the society, and is bound to know its rules and by-laws, whether recited in the policy or not (Bliss on Life Ins. 2d ed. pp. 766, 767; and cases cited).

But plaintiff insists that, even if the certificate of membership lapsed by reason of the non-payment of dues, it was subsequently revived by the payment of such dues to the secretary of the society, and their acceptance by him. Such acceptance, however, was conditional, and in the receipt given therefor, it is plainly stated that no obligation was assumed by the society to revive the certificate, unless the applicant passed a satisfactory examination by its medical examiner. This he failed to do, and the money so paid was tendered back to the plaintiff. We think, therefore, that the certificate lapsed in June, 1887, and was not subsequently revived by the defendant; and was entirely annulled and void before the commencement of this action.

Plaintiff, however, contends that, notwithstanding all this,

the judgment should be affirmed, because of the verbal agreement made with the agent, before the issuing of the certificate policy. But it has been held that such agreements varying the terms of the policy cannot be shown (*Lamatt* v. *Hudson R. Fire Ins. Co.*, 17 N. Y. 199).

He also claims that the judgment should be sustained on the ground of the fraud practised on him by the agent.

Granting that the agent made false representations to induce the plaintiff to become a member of the society, he could only recover for such fraud the damages he sustained thereby, which would be the amount of money he paid out, by reason of such false representations, and not the sum he would have received if such representations had been true. As the amount he received from the defendant was considerably larger than that paid by him to it, we fail to see that he has suffered pecuniary damages by reason of the transaction.

The judgment should therefore be reversed and a new trial ordered, with costs of this appeal to the appellant.

VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, with costs.