HUTCHINSON v. SUPREME TENT OF KNIGHTS OF MACCABEES
OF THE WORLD.

(Supreme Court, General Term, Fifth Department.   April 13, 1893.)

1. INSURANCE—PROOFS OF LOSS—WAIVER.
Where application is made to the proper officer of a mutual benefit association for blanks on which to make proofs of loss, and the officer replies that it would be useless to submit the proofs, as the claim would not be allowed, the requirement of proofs of loss is thereby waived.

2. MUTUAL BENEFIT INSURANCE—CONTRACT—CONSTITUTION OF SOCIETY.
Where an application for membership in a mutual benefit society states that "I hereby agree that these statements, with this application and the constitution, [of the society,] shall form the basis of the contract," the constitution becomes part of the contract of insurance.

3. SAME—AMENDMENT OF CONSTITUTION.
Where the constitution provides that it may be amended or altered, as to the laws governing the endowment funds, by a two-thirds vote of all the members present at a meeting of the governing body of the society, which is composed of delegates elected by the subordinate bodies, an amendment so adopted is binding on the existing members.

4. SAME—DISABILITY OF MEMBER.
A switchman on a railroad, by the loss of the fingers of one hand, is disabled, within a provision of the constitution of a mutual benefit society, that "a member who, by reason of a disability, * * * becomes unable to direct or perform the kind of business or labor which he has always followed, and by which alone he can thereafter earn a livelihood, shall be deemed entitled to disability benefits;" and he is entitled to such benefit, where no question is raised as to his ability to earn a livelihood by any other kind of business.

Exceptions from circuit court, Erie county.

Action by Joseph Hutchinson against the Supreme Tent of the Knights of the Maccabees of the World. Defendant moves for a new trial on exceptions taken at circuit, and ordered to be heard in the first instance at the general term.   Verdict modified.

Argued before DWIGHT, P. J., and MACOMBER, LEWIS, and HAIGHT, JJ.

Harlow C. Curtiss, for plaintiff.
Frank R. Perkins, for defendant.

HAIGHT, J.   This action was brought by the plaintiff for the purpose of recovering $1,000 on account of a disability occasioned by the loss of the fingers upon one of his hands.   The defendant is incorporated, under the laws of the state of Michigan, as a fraternal and mutual benefit association.   Its chief purpose is that of insuring its members against death or accident.   Its principal organization and its branches are called "tents," and known respectively as the "Supreme Tent" and "Subordinate Tents."   On the 3d day of February, 1886, the plaintiff applied to be admitted as a member of the association at Beaver Tent, No. 4, at the city of Toronto, where he was then living.   His application was approved, and on the 10th day of March thereafter a certificate was issued to him by the defendant, providing as follows:

"This certifies that Sir Knight Joseph Hutchinson is a member of Beaver Tent, No. 4, located at Toronto, Ont., and that he is a beneficiary in good

standing; that, in accordance with and under the provisions of the laws governing the order, he is entitled to receive one assessment on the membership, but not exceeding in amount the sum of two thousand dollars, as a benefit to Susan Hutchinson, his wife, upon satisfactory proof of his death, and the surrender of this certificate: provided he shall have, in every particular, complied with all the rules and regulations of this order. In case of permanent or total disability, or upon attaining the age of seventy years, he will be entitled to receive one half of said endowment, as provided in the laws of the order."

Subsequently he removed to the city of Buffalo, and was thereupon transferred to Macedonian Tent, No. 85, one of the defendant's subordinate tents at Buffalo, and continued to be a member of the order, in that tent, in good standing, until the 1st day of November, 1889, when he received an injury to his hand, in coupling cars, which necessitated the amputation of the fingers of the right hand. He then called upon one C. W. Hinson, an attorney and an officer of the Macedonian Tent, to procure for him the money that he was entitled to under the certificate of membership. Thereupon Hinson wrote a letter to M. S. Boynton, the supreme record keeper of the defendant's order at Port Huron, Mich., asking for the necessary blanks upon which to make proof of the plaintiff's disability. Boynton, in reply thereto, said that "as the loss of a leg or hand or eye does not constitute a total and permanent disability, under our laws, it would be useless sending blank to fill out for a disability claim. It would only be rejected." Thereupon the action was brought.

It is claimed that this action was prematurely brought, for the reason that the plaintiff had not submitted proper proofs of his disability, or waited until the expiration of the time given to the defendant to make payments of claims of this character under its constitution and by-laws. The supreme record keeper is made the financial secretary of the order, keeps all of the books and proceedings, signs the orders for the payment of money, and appears to be the general active officer of the order, subject to the board of trustees. His letter to the plaintiff's attorney is, in effect, that it was useless for him to submit proofs of disability, as his claim would be rejected. We think that this was a waiver on the part of the defendant of the necessity of presenting proofs of disability, and complying with the formal procedure required by the defendant's order to perfect the plaintiff's claim. Payn v. Relief Society, 17 Abb. N. C. 53, 57; Grattan v. Insurance Co., 80 N. Y. 281.

The trial court directed a verdict in favor of the plaintiff for $1,000, and the interest thereon from the commencement of the action. This was done upon the theory that the certificate issued to the plaintiff became the contract between the parties, and that under it the plaintiff was entitled to recover if his injury was permanent, even though it was not total. There is no question but that his injury was permanent. It would have been permanent, had he but lost the end of one finger at the first joint. But would such an injury entitle him to the endowment, under the contemplation of the parties? The plaintiff, in his application for membership in the defendant's order, states:

"I hereby agree that these statements, with this application and the consti-
tution of the Supreme Tent of the Knights of the Maccabees of the World,
shall form the basis of the contract for endowment."

The certificate issued to him, and which it is claimed constitutes
the contract, provides, as we have seen, that in case of permanent or
total disability, or upon attaining the age of 70 years, he will be en-
titled to receive one half of the endowment, "as provided in the
laws of the order." We thus have the certificate referring to the
laws of the order, as fixing his rights to recover for his disability, and
his express agreement in his application, making his statements
therein, and the constitution of the order, the basis of the contract
between them for his endowment. It consequently appears to us
that the constitution becomes a part of the contract. It was so
treated in the case of Demings v. Supreme Lodge, etc., 131 N. Y. 522,
30 N. E. Rep. 572. The constitution in force at the time the plaintiff
became a member of the defendant's order provides, (article 4, § 13:)

"A total and permanent disability to perform or direct any kind of labor or
business, or upon reaching the age of seventy years, shall entitle a member
holding a certificate of endowment, so disabled or aged, to the payment of one
half of the endowment to which he would be entitled at death."

Here we have a definition or a description of the disability that
would entitle the plaintiff to recover. It is not only permanent, but
total, so as to be unable to perform or direct any kind of labor or busi-
ness. It is not limited to the business in which the plaintiff was
engaged at the time of his injury, but it is, in the broadest language
possible to use, "a total and permanent disability to perform or direct
any kind of labor or business." A total disability is ordinarily one
of fact, and is for the jury. It must be determined from the facts
and circumstances disclosed in each case. That which would be
total disability in one case might not be in another. The loss of a
hand by a lawyer might interfere but slightly in the transaction of
his business, or in the performance of his work, while to a man who
had learned a particular trade, by which he had always earned his
living, and was entirely ignorant of all other trades or business, it
might prove to be a much more serious disability. Ordinarily the loss
of the fingers of the hand does not constitute total disability from the
performance of "any kind of labor or business." Knapp v. Associa-
tion, 53 Hun, 84, 6 N. Y. Supp. 57; Saveland v. Fidelity & Casualty
Co., 67 Wis. 174, 30 N. W. Rep. 237; Lyon v. Assurance Co., 46 Iowa,
631; Young v. Insurance Co., 80 Me. 244, 13 Atl. Rep. 896; Sawyer
v. Casualty Co., 1 Bigelow, Cas. 289; Hooper v. Insurance Co., 2
Bigelow, Cas. 573; Bac. Ben. Soc. § 295; Cooke, Life Ins. § 108; 4
Harv. Law Rev. 176. We are, therefore, unable to see how the judg-
ment can be sustained, under the old constitution.

On the 8th day of February, 1887, the constitution was amended.
The amended constitution provides that "a member who, by reason
of a disability incurred after admission to endowment membership,
becomes unable to direct or perform the kind of business or labor
which he has always followed, and by which alone he can thereafter
earn a livelihood, shall be deemed entitled to disability benefits."
The amended constitution further provides that in case of such disa-

bility the benefits that he shall be entitled to receive are, "annually, one tenth part of the sum for which his endowment certificate is issued." So that under the amended constitution the plaintiff would be entitled to receive, if disabled, one tenth of $2,000 annually, instead of $1,000 in a gross sum, as provided under the former constitution; and the disability which shall entitle him to the receipt of this annual provision is where he is unable to direct or perform the kind of business or labor which he has always followed, and by which alone he can thereafter earn a livelihood. The trial court was of the opinion that the amended constitution had no application to the case; that the order could not, by an amendment of its constitution, change the rights of the plaintiff under his contract. We are not able to concur in this view. As we have seen, the plaintiff, in his application, agreed that the constitution of the order should be the contract. The constitution then provided that it might be altered or amended, as to the laws governing the endowment funds, by a two-thirds vote of the members present at a regular meeting of the supreme tent, or at a special meeting called for that purpose. The supreme tent was composed of delegates elected by the certificate holders of the subordinate tents in the different states and Canada. The plaintiff, as a certificate holder, was entitled to vote for the person who should represent him as the delegate from the Macedonian Tent,—the tent of which he was a member. He thus had a voice in determining whether or not there should be an amendment of the constitution; and the amendment, when made, must be deemed to become a part of the provisions of his contract. The amended constitution, therefore, became operative and binding upon him, as well as the other certificate holders of the order. May v. Fund Society, 14 Daly, 389. His right to recover should therefore be determined by the provisions of the new or of the amended constitution. The evidence in the case clearly shows that the plaintiff is totally disabled from performing the duties of a switchman upon the railroads, and that for many years he has been engaged in that kind of labor. Whether he can now earn a livelihood by some other business was a question of fact, which, had it not been waived, should have been submitted to the jury. The defendant's counsel asked the court to direct a verdict in the case, and did not thereafter request to have this matter submitted to the jury. He thereby left it for the determination of the trial court, and that court, having directed a verdict in favor of the plaintiff, must be deemed to have determined the fact against him. The amount of the verdict, however, should have been limited to the first installment of $200 falling due under the constitution, with the interest thereon from the date of the commencement of this action. The verdict should therefore be modified by reducing the amount thereof to the sum of $200, with interest thereon from the date of the commencement of this action, being the amount of the first installment due under the amended constitution, and the verdict so modified affirmed, and judgment ordered thereon for the plaintiff, with costs in the trial court, but without costs of this appeal to either party. All concurred.