CATO, admr., *v.* ÆTNA LIFE INSURANCE CO. *et al.*

1. To entitle the administrator of the insured to recover under the following provision of a group policy, taken out by an employer for the benefit of his employee, to wit: "If total disability of any employee entitled to insurance, under the schedule of insurance contained in this policy, begins before the age of 60, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy," the insured must have become totally disabled to pursue any occupation for wages or profits before reaching the age of sixty, and such disability must have existed for a period of six months.

2. Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he depends for a living.

3. When the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, although he is still able to perform some parts of his work. Total disability is inability to do substantially all of the material acts necessary to the transaction of the insured's occupation, in substantially his customary and usual manner.

4. Total disability does not mean absolute physical inability to work at one's occupation, or to pursue some occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence require him to desist, and he does in fact desist, from transacting his business. In such circumstances, total disability exists.

5. If the insured, who was afflicted with tuberculosis, had quit pursuing his occupation of a weaver, on account of his disease, then, under the evidence of the medical experts that it was unwise for him to work in the condition of his health, it would have been for the jury to say whether ordinary care required him to abandon his occupation, and whether total disability existed, under the principle of law that matters

Accident Insurance, 1 C. J. p. 414, n. 27; p. 417, n. 38, 39, 40; p. 463, n. 27, 31, 32, 33; p. 464, n. 37; p. 508, n. 1, 5; p. 511, n. 46.

Insurance, 32 C. J. p. 1152, n. 94, 95; p. 1158, n. 29, 30, 38.

of this kind are ordinarily questions of fact for the jury. But as the insured did not abandon his calling on account of his disease, this principle is not applicable.

6. Where the insured worked for his employer at his ordinary occupation from the date of the insurance to July 1, 1921, when the cotton mills of the employer were shut down for lack of orders, and where the evidence fails to disclose that during such period the insured lost any time or wages, and where the evidence does not show that the deceased had abandoned his occupation after July 1, 1921, and until September 14, 1921, on account of his disease, when on the last-named date he was employed at his occupation of a weaver at another cotton mill, where he worked more than ninety-two per cent. of his time, and earned more than forty-two per cent. of the wages usually earned by a competent, experienced weaver in full health, until January 14, 1922, when his certificates of insurance were properly canceled, a verdict for the insurer was demanded, although it appeared that the insured had symptoms of tuberculosis two or three years prior to July 1, 1921, and that thereafter he was in an advanced stage of that disease, in consequence of which, in the opinion of medical experts, it was unwise for the insured to work and his earning capacity was decreased; and the court did not err in directing a verdict for the defendant.

No. 5671. June 23, 1927.

Equitable petition. Before Judge Roop. Troup superior court. July 27, 1926.

J. C. Cato as administrator of the estate of C. J. Cato, deceased, brought suit against the Ætna Life Insurance Company and the New England Southern Mills, upon two certificates of insurance issued by the former company under a group policy of insurance issued to the latter company, the certificates of insurance in turn being issued by the latter company to C. J. Cato, one of its employees. The basis of the suit is that during the life of said certificates the deceased became totally disabled, within the meaning of the policy, due to tuberculosis, and that under the terms of the policy his administrator is entitled to recover the full face value of the certificates, on account of the total disability of the deceased. The policy under which the certificates were issued contains the following clause: "If total disability of any employee entitled to insurance under the schedule of insurance contained in this policy begins before the age of 60, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy." Said

certificates were issued under and subject to the terms and conditions of the policy. The statement of the employer to the employees, notifying them that the former has taken out this policy, contains this provision: "The policy also provides for the amount of full insurance, subject to the terms of the policy in the event a permanent total disability occurs before the age of sixty. By permanent total disability is meant permanent and total inability to pursue any gainful occupation. For example, total paralysis and incurable insanity are cases of total disability within the meaning of the policy." The policy was issued on April 10, 1920, to the Hogansville Mills, the predecessor of the New England Southern Mills, and covered all of the employees of the mill employed at that time. At that time C. J. Cato was an employee of the mill, and a certificate for $800 was issued to him; and on April 10, 1921, another certificate for $100 was issued to him.

At the trial of the case the following facts appeared from the evidence and an agreed statement of facts: The insured worked at the Hogansville branch of the New England Southern Mills until July 1, 1921, when the mill was shut down on account of lack of work. The mill resumed operations on December 15, 1921. In the agreed statement it appears that the insured did not return to work at the Hogansville mill in December, 1921, or at any time thereafter. One of his sons testified that the insured applied to this mill for work when it resumed operations, and that the overseer of the mill told the witness that he was sorry that he could not give the insured work, as he did not have a job the insured was able to keep up. On January 14, 1922, the employer canceled the two certificates issued to the insured, on account of his discontinuance in its employment. Some time in September, 1921, the insured was employed by the Unity Cotton Mills as a weaver, and he worked continuously as a weaver in said mills from September 17, 1921, to March 25, 1922. His name appeared on the weekly pay-roll of that mill for September 24, 1921, and on each weekly pay-roll thereafter up to and including March 25, 1922. After the latter date he did not work for a period of three weeks. He worked for said mill for the week ending April 22, 1922, and each succeeding week until May 20, 1922. From September 24, 1921, to January 14, 1922, the mill was operated 651 hours. The deceased worked every hour during this period, except forty-eight.

He earned during this period $101.50. He worked at piece-work. He was a competent weaver, of long experience, and the average weaver working at piece work earned forty cents an hour. From January 14, 1922, to May 20, 1922, inclusive, the insured worked for the Unity Cotton Mills as a weaver, at piece-work. The mill was operated 830 hours during that period. The insured worked 555 hours. He earned during this period $76.20. From May 20, 1922, to July 22, 1922, he did not work. On the latter date he began work with the Elm City Cotton Mills, and worked until November 4, 1922, with the exception of four weeks. He died on April 9, 1923, at the age of 53 years and 3 months. After July 1, 1922, his health was bad. He was suffering with tuberculosis. He showed symptoms of this disease for two or three years prior to that date. The plaintiff, who was his son, testified that he was unable to work at his trade of a weaver, that after the mill at Hogansville shut down he stayed six or seven weeks at that place, that witness moved him from Hogansville to LaGrange, where he did no work for a while, on account of his condition, that when he came to LaGrange he was weak and in a run-down condition, had a bad cough, was suffering from tuberculosis, and that this condition continued until his death. On cross-examination, witness testified he did not know how many weeks his father worked at Unity Mills during the period beginning September 17, 1921; he did not work regularly, because he was not able to work. He worked at the cloth room at the Elm City mill.

Doctor Harvey, for the plaintiff, testified that he waited upon the deceased in 1920 or 1921; that in 1921 he was suffering with tuberculosis; that witness examined him in the spring or early summer of 1921, and before July 1, 1921; that the last time witness saw him at Hogansville, in 1921, he was suffering about like any patient would be from pulmonary tuberculosis in the advanced stage; that witness made a positive diagnosis; that a man in the advanced stage of tuberculosis ought not to work; that no man is physically able to work who has tuberculosis; that he did not think the deceased was able to work in a cotton mill. On the cross-examination he stated that if the deceased actually worked, he would not say that he was not physically able to work, but that it was unwise for him to work.

Doctor O'Neal testified for the plaintiff, that he waited on the

deceased in his lifetime, and about the latter part of 1921, during 1922, and the first part of 1923. In the latter part of 1921 the deceased had tuberculosis, both lungs involved, the right being more involved than the left, and he was not physically able to work.

Doctor Clark testified for the plaintiff, that the deceased had defects in weight, defective eyesight, impacted wax in both ears, and an abnormal condition of lungs, necessitating further examination.

Doctor Hammett testified for the plaintiff, that he was called to see the deceased a week or ten days before his death. He was then in an unconscious condition, and in an advanced stage of tuberculosis.

The widow of the deceased testified that at the time the mill at Hogansville closed down, the condition of the insured was bad, that he had tuberculosis and was really not able to work, but that he worked some. On cross-examination she testified that, beginning with September, 1921, the insured worked off and on about two or three months at Unity Cotton Mills, but did not work much; that much of the time he was sick and was not able to work; that he worked as far as he was able to work, but not regularly; that from September, 1921, until 1922, he worked. and drew wages when he worked, and that from the summer of 1922 until November of that year, he worked off and on at the Elm City Cotton Mills and drew wages.

J. L. Reeves, for the defendant, testified that he was overseer of weaving at the Unity Cotton Mills; that the deceased was employed there, during the year 1921, at the weaving-room of the mill, that he began work some time in April, witness thinks; that he worked there in 1921 or 1922, witness has forgotten which; that he was paid by the piece and did work: that witness discontinued the services of the deceased in April, 1922, because he had tuberculosis; that the deceased had been at work at this mill about two months when he discovered that he had that disease; and that his appearance was that of a man who was sick and weak.

It was admitted that the plaintiff had made proper demand and proof of loss, and that the insured died on April 9, 1923.

*L. B. Wyatt* and *J. T. Thomasson,* for plaintiff.
*Lovejoy & Mayer,* for defendants.

HINES, J. (After stating the foregoing facts.)

The Ætna Insurance Company, on April 10, 1920, issued to Hogansville Mills, the predecessor of the New England Southern Mills, a group policy insuring the lives of the employees of that mill. At that time C. J. Cato was an employee of the Hogansville Mills. On April 10, 1920, a certificate of insurance for $800 was issued to him under said policy; and on April 10, 1921, another certificate for $100 was issued to him thereunder. These certificates were issued under and subject to the terms and conditions of said policy. The certificates issued to employees under this policy were subject to cancellation when they quit the service of the employer who took out the policy of insurance. In pursuance of this provision these certificates were canceled on January 14, 1922. The present suit was brought by the administrator of the insured, to recover the full amount of the above certificates, and was predicated upon the proposition that the insured had become totally disabled from pursuing any occupation for wages or profit prior to the cancellation of said certificates by the employer. At the close of the evidence the court directed a verdict for the defendants, and to this direction and judgment the plaintiff excepted upon the ground that it was contrary to law.

If a verdict in favor of the defendants was not demanded by the evidence, then the court erred in so directing. If there was an issue of fact as to whether the insured had sustained a total disability which prevented him from pursuing his occupation of a weaver, the court should not have directed a verdict, but should have left the matter to the decision of the jury. In determining this question, we must first determine what constitutes a total disability within the meaning of the provision of the policy upon this subject. This provision is as follows: "If total disability of any employee entitled to insurance, under the schedule of insurance contained in this policy, begins before the age of 60, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy." Under this provision, when does a total disability exist? Policies of insurance will be liberally construed in favor of the

object to be accomplished, and provisions therein will be strictly construed against the insurer. *Johnson* v. *Mutual Life Insurance Co.,* 154 *Ga.* 653 (115 S. E. 14) ; *Penn Mutual Life Insurance Co.* v. *Milton,* 160 *Ga.* 168, 171 (127 S. E. 140). But the contract of insurance should be construed so as to carry out the true intention of the parties. Civil Code (1910), § 2475. The rights of the parties are to be determined by the terms of the policy, so far as they are lawful. The language of the contract should be construed as a whole, and should receive a reasonable construction, and not be extended beyond what is fairly within the terms of the policy. Where the language is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made. *Yancey* v. *Ætna Life Insurance Co.,* 108 *Ga.* 349 (33 S. E. 979) ; *Wheeler* v. *Fidelity &c. Co.,* 129 *Ga.* 237 (58 S. E. 709) ; 1 C. J. 417, § 43.

Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he must depend for a living. Total disability is the antithesis of partial disability. One is the opposite of the other. Taylor *v.* Southern States Life Insurance Co., 106 S. C. 356 (91 S. E. 326, L. R. A. 1917C, 910) ; Gordon *v.* U. S. Casualty Co. (Tenn.), 54 S. W. 98; Commercial Travelers Mut. Acc. Asso. *v.* Springsteen, 23 Ind. App. 567 (55 N. E. 973) ; Sawyer *v.* U. S. Casualty Co. (Mass.), 8 Am. L. Reg. N. S. 233; Pacific Mutual Life Ins. Co. *v.* Branham, 34 Ind. App. 243 (70 N. E. 174). It follows as a necessary consequence that the insurer is not liable as for a total disability when the accident or disease has merely prevented the insured from doing as much in a day's work as before. Such lessened earning capacity may be a case of partial disability, but not a case of total disability. Travelers Mut. Acc. Asso. *v.* Springsteen, supra; 1 C. J. 463, §§ 163, 164. But when the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, although he is still able to perform some parts of his work. U. S. Casualty Co. *v.* Hanson, 20 Colo. App. 392 (79 Pac. 176) ; Travelers Mut. Acc. Asso. *v.* Springsteen, supra; Neill *v.* Order of United Friends, 78 Hun, 255. The courts in most jurisdictions hold that "total disability" is inability to do substantially all of the material acts necessary to the transaction of the insured's business or occupation,

in substantially his customary and usual manner. Order of United Commercial Travelers v. Barnes, 72 Kan. 293 (80 Pac. 1020, 82 Pac. 1099, 7 Ann. Cas. 809); 14 R. C. L. 1315, § 491; Young v. Travelers Insurance Co., 80 Me. 244 (15 Atl. 896); Lobdill v. Laboring Men's Mut. Aid. Asso., 69 Minn. 14 (71 N. W. 696, 38 L. R. A. 537, 65 Am. St. R. 542); James v. U. S. Casualty Co., 113 Mo. App. 622 (88 S. W. 125). Total disability does not mean absolute physical inability to work at one's occupation, or to pursue any occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence required him to desist and he did in fact desist from transacting his business. It is sufficient if the insured's sickness was of such a character that ordinary care required or authorized him to desist and he did desist from performing the labors incident to his occupation; in such circumstances total disability exists. Lobdill v. Laboring Men's Mut. Aid Asso., supra; Young v. Travelers Insurance Co., supra; Hohn v. Interstate Casualty Co., 115 Mich. 79 (72 N. W. 1105).

If the insured had quit pursuing his occupation of a weaver on account of his disease, then, under the evidence of the medical experts that it was unwise for him to work in the condition of his health, it would have been for the jury to say whether ordinary care required him to abandon his occupation, and whether he was totally disabled, under the principle of law that these matters are ordinarily questions of fact for the jury. Hutchinson v. Supreme Tent, 68 Hun, 355 (22 N. Y. Supp. 801). But while the insured was afflicted with this disease, he did not abandon his occupation as a weaver. He continued to work as a weaver, and worked as such at the Hogansville Cotton Mills up to July 1, 1921, when that mill shut down on account of lack of orders. There is no direct evidence that he did not make full time and earn full wages up to that date. Dr. Harvey testified that to the best of his recollection he examined him in the spring or early summer of 1921, that he possibly examined the insured before July 1, 1921, and that the last time he saw the insured in Hogansville the insured was suffering like any other patient would from pulmonary tuberculosis in the advanced stage; that a man in the advanced stage of tuberculosis was not physically able to work; and that he did not think the insured was able to work in a cotton mill; but

that if the insured actually worked, he would not say that he was not physically able to work, but that it was unwise for him to work. When this physician last saw the insured in Hogansville is not stated, and it does not appear that this condition of the insured had existed for six months prior to January 14, 1922, when the policy of insurance was actually canceled by the insurer, under its terms, because the insured had quit the service of his employer. The son of the insured, who is the plaintiff in this case, testified that after the mill at Hogansville shut down, the insured stayed at Hogansville for six or seven weeks; that he moved the insured from Hogansville to LaGrange, where the insured did no work for a while, on account of his condition; that when the insured came to LaGrange he was weak and in a rundown condition, had a cough, was suffering from tuberculosis, and that this condition continued until his death; but this condition of the insured's health according to this testing was for a period of less than six months prior to January 14, 1922. On cross-examination this witness testified that he did not know how many weeks the insured worked at the Unity Cotton Mills. On September 14, 1921, the insured was employed as a weaver at the Unity Cotton Mills, and appeared upon the weekly pay-roll of that mill for September 24, 1921, and on each weekly pay-roll thereafter up to and including March 25, 1922. After the latter date he did not work for a period of three weeks. He worked for said mill for the week ending April 22, 1922, and each succeeding week until May 20, 1922. From September 24, 1921, to January 14, 1922, that mill was operated 651 hours, and the deceased worked there during all of that period, except 48 hours, and earned during this period $101.50. He worked at piece-work, was a competent weaver of long experience, and the average weaver, working at piece-work, earned forty cents an hour. He thus earned during this period a little over 42 per cent. of what a competent, experienced weaver could have earned at the work which he was doing. From January 14, 1922, to May 20, 1922, the insured worked for the same mill as a weaver at piece-work. During this period this mill was operated 830 hours, and the insured worked 555 hours of said time and earned $76.20, or something more than 34 per cent. of what a competent, experienced weaver, working at piece-work, could have earned for the time he worked. During

this period he worked for about one third of the time the mill was in operation. During this period, however, his certificates of insurance had been canceled. During the period that his certificates were in force the insured worked more than ninety-two per cent. of the time the mill was in operation, and earned more than forty-two per cent. of what a competent and experienced weaver, in full health, could have earned. In these circumstances we think that a finding was demanded that the insured, prior to January 14, 1922, had not sustained a total disability. During that time his loss of time was less than eight per cent. of the average wages earned by competent, experienced weavers in full health. Conceding that his loss of time and loss of wages were due to the condition of his health, the evidence does not make a case of total disability which had existed for a period of six months prior to the cancellation of the policy. This being so, we are of the opinion that the court did not err in directing a verdict for the defendants. *Judgment affirmed. All the Justices concur.*