## PRUDENTIAL INS. CO. OF AMERICA v. WOLFE.
### No. 9098.

Circuit Court of Appeals, Eighth Circuit.
Aug. 26, 1931.

Rehearing Denied Oct. 22, 1931.

Henry I. Eager, of Kansas City, Mo. (William C. Michaels, Kenneth E. Midgley, and Meservey, Michaels, Blackmar, Newkirk & Eager, all of Kansas City, Mo., and Kitt & Marshall, of Chillicothe, Mo., on the brief), for appellant.

Scott J. Miller, of Chillicothe, Mo. (Roger S. Miller, of Kansas City, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge.

The appellee, who will hereafter be called plaintiff, sued appellant, the Prudential Insurance Company of America, which will hereafter be called defendant, on two certificates or policies of insurance. The suit is based on the clauses in the certificates which insure against total and permanent disability. The insurance was termed group insurance, and was limited to employees of defendant under group insurance policy No. 1690 dated October 1, 1924. The group pol-icy provided for additions to the number insured. It also provided that individual insurance should "cease and determine upon termination of the employment of such person with the employer."

On April 25, 1928, defendant issued to plaintiff certificate No. 59788, which, so far as applicable here, reads as follows:

"The Prudential Insurance Company of America in accordance with and subject to the terms and conditions of its Group Policy No. 1690, insuring the lives of a group of the employees of the Prudential Insurance Company of America, Newark, New Jersey, has insured the life of Glenn E. Wolfe, an employee included in the said group of employees, for the amount of Four Thousand Dollars payable to the Beneficiary designated by said employee upon receipt of due proof of the death of said employee while the insurance on the life of said employee under said policy is in force. * * *

"Total and Permanent Disability. If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime, said amount of insurance will be paid to said employee either in one sum six months after the company has received due proof of such disability or incapacity, or in monthly installments during five years, the first instalment to be payable immediately upon receipt by the company of due proof of such disability or incapacity; in accordance with the provisions of said policy. The disability benefits will be granted subject to cessation, in accordance with the provisions of the policy, should such disability or incapacity prove to be temporary and not permanent. The entire and irrecoverable loss of the sights of both eyes, or of the use of both hands, or of both feet, or of one hand and one foot, will be considered total and permanent disability or incapacity within the meaning of the provisions of said policy.

"Conversion of Insurance. When the insurance on the life of said employees shall terminate by reason of termination of employment for any reason whatsoever, the company will issue, upon application by said employee within thirty-one days after the

date of such termination, without evidence of insurability, a policy on his or her life on any of the forms customarily issued by the company, except a policy of Term Insurance, for the same amount for which said employee was insured under said group insurance policy at the time of the termination of employment, subject to the payment of premium for such policy at the then current rates of the company according to the occupation of and at the age attained by said employee at that time."

On June 1, 1928, defendant issued to plaintiff certificate No. 59788-B, which, so far as applicable here, contains the same provisions as were contained in certificate No. 59788.

On August 18, 1928, plaintiff wrote a letter addressed to Mr. Thomas Husk and the Prudential Insurance Company. That letter, omitting address and signature, reads as follows: "I have been advised by my family physician that my lungs are weak and for that reason I should locate in a higher altitude. I therefore regret to inform you that I feel that it is necessary for the sake of myself & family that his instructions be followed. I will appreciate if you will order my final for the week of Aug. 20th, 1928. However this does not mean I want to sever connection with the Prudential Ins. Co. that I would appreciate your recommendation personal & through the Home Office for reemployment should I locate where this Co. operates. My association with you & your staff has been very pleasant and I regret very much that I must leave."

Plaintiff's services with the Kansas City office of defendant terminated August 23, 1928. After that date plaintiff went to Colorado. He made application for employment to the Denver office of defendant. He was not successful. Under date of December 7, 1928, Edward Gray, vice president of defendant, wrote to plaintiff at Denver, Colo., a letter which, omitting address and signature, reads as follows:

"We are sorry to know that you are unable to attend to business on account of the condition of your health. The company has considered your case and arranged with Superintendent Showalter to pay you regular compensation up to two weeks, the maximum that may be granted to one of your length of employment under the terms of the Service Disability allowance plan.

"It is with regret we have to advise you that the amount of benefits payable to you

under the company's disability plan was exhausted with the payment for the period ending September 8, 1928, and that your connection with the Prudential will have to be regarded as terminated as of the date mentioned and your name removed from the roll of employees. This is solely a matter of business routine in order that our records may be correct, as it can not be said with accuracy that you are an employee when our plan makes no provision for payment to you, and, in turn, you can render no service.

"Manager Thatcher of our Service Allowances Department is, under even date, writing Mr. P. H. Showalter, Superintendent in charge of our Denver #1 office and suggesting that he take up with you the matter of undergoing a course of treatment at the expense of the Prudential in the Cragmor Sanitorium, Colorado Springs, Colo. If you decide to take the cure in an approved sanitorium the discontinuance of the regular disability allowance will not, however, affect your taking the cure, the cost of which will be borne by this company until further notice.

"We are hopeful that you will not only accept our offer but that the opportunity to follow the instructions of physicians, who are experts in the handling of cases such as yours, will result in the arrestment of your ailment and the recovery of your strength in a comparatively short time."

Under date of December 8, 1928, E. H. Thatcher, manager of the defendant at Kansas City, wrote to plaintiff a letter, which, omitting address and signature, reads as follows:

"Before we were provided with information as to your address we communicated with Mr. P. H. Showalter, Superintendent in charge of our Denver 1 District, as to paying you regular compensation for the weeks of August 27 and September 3 and as to the Company's assuming your expenses for treatment at the Cragmor Sanatorium, Colorado Springs, Colo.

"Our plan of Service Disability Allowances makes it possible to provide tuberculosis employees with institutional care at an approved sanatorium and to pay their traveling expenses in going to and from that place. It is apparent from reports received in your case that you need the attention and care that you would have in a sanitorium such as Cragmor which is in charge of Dr. Alexius M. Forster, Physician in Chief, a rec-

ognized expert in the handling of cases such as yours. We therefore, strongly urge that you give consideration to taking the cure there and in the event of your deciding to avail yourself of such an opportunity the Prudential will assume your expenses for treatment and pay for your personal railroad and Pullman fares from Kansas City, Mo., to Colorado Springs, as well as your meals while en route, and the transportation of your baggage.

"If you favor going to Cragmor please communicate at once with the Physician in charge with a view to ascertaining whether you can be provided with accommodations and stating that this Company will take care of your expenses for treatment. As soon as you receive a favorable reply you should make immediate arrangements to leave and prior to doing so Supt. Husk of the Kansas City, Mo. #3 district under whom you formerly worked, and to whom we are under even date writing, will advance you a sum slightly less than will be required to cover your traveling expenses.

"As soon as we hear from you as to your decision we will, if it is favorable, communicate at once with those in charge at Cragmor so that they will understand what the Prudential will do for you."

Under date of December 21, 1928, E. H. Thatcher, manager of defendant at Kansas City, wrote another letter to the plaintiff which, omitting address and signature, reads as follows:

"Your letter of December 10 has been considered by our Service Allowances Committee. The Committee has taken note of the fact that you do not care to enter a sanitorium for treatment as you feel that you could do just as well outside of the sanitorium in Denver, Colo., or some part of New Mexico.

"It is the opinion of our medical advisers that since you have not had the benefits of sanatoria treatment you would not be apt to do the things you should do if you were to live under the conditions mentioned in your letter. We would suggest that you consider going to Cragmor Sanitorium near Colorado Springs, where a number of Prudential employees are undergoing treatment. This is a good sanatorium and we feel that you would make encouraging progress toward the recovery of your health if you were to go there for a while. Should you think favorably of this the company will pay for the cost of treatment as well as your transportation in going to the institution.

"In the event of your deciding to accept this offer please let us know so that we may proceed to make the necessary arrangements."

To this letter was attached a postscript reading as follows: "Your case will be considered by our Ordinary Claim Dept. in connection with the policies in force on your life."

Plaintiff did not accept the offer of treatment.

Plaintiff's complaint contains two counts. The first is based on the certificate of insurance issued April 25, 1928, and the other on the certificate issued June 1, 1928. The allegations of the two counts are the same with the exception of the date and number of the certificates. Each count contains the following allegation:

"Plaintiff states that on the 10 day of August, 1928, he was affected with the disease called pulmonary tuberculosis and on account of the ravages of said disease he, on said 10 day of August, 1928, became totally and permanently disabled. Plaintiff states that he is totally and permanently disabled and that his disability occurred while said policy or certificate of insurance was in full force and effect. Plaintiff states he is now under the age of sixty years.

"Plaintiff states the disease that he contracted and that he now has, that of pulmonary tuberculosis, is permanent and that the extent of the disease is in such a stage that he is totally disabled. That any work of any kind of a gainful nature that he could do, on account of the disease would shorten his life, would hasten his death from this disease. That the disease, pulmonary tuberculosis, with which he is affected, is incurable and that any kind of work exaggerates the disease and causes him great pain and that he is rendered incapable of continuing any avocation that would be gainful to him.

"Plaintiff states that he has performed all the obligations and conditions of said insurance policy that by the terms thereof he was required to perform. Plaintiff states that his total and permanent disability occurred while said policy was in full force and effect."

The testimony of plaintiff and his wife was in substance as follows:

Plaintiff was in his thirty-eighth year at the time this case was tried in June, 1930. He was born in Sullivan county, Mo., and lived there until 1928. He lived on a farm doing general farm work until he went to

Kansas City in February, 1928. After he went to Kansas City he worked for Sears-Roebuck for about three weeks. He began work for the defendant at Kansas City on the 20th of April, 1928, and worked until August 23, 1928. One night about the 15th of June, 1928, while he was out trying to sell insurance he was caught in a rain and became wet before he could get to shelter. From that wetting he contracted a cold which developed into tuberculosis. On August 10, 1928, he was advised by his physician, Dr. Sams, to go to Colorado. He did so and remained there until November, 1928, when he returned to Kansas City. On December 10, 1928, he began to work for the American Insurance Company and continued to work for that company until February 4, 1929. He began to work for the Athletic Tea Company in February, 1929, and worked until May, 1929. He then moved back to Sullivan county. He planted a crop that season and did some of the work of cultivation. He began to sell automobiles in June, 1929, and continued that work until October of the same year. During that summer and fall he laid off part of the time. He rented land for the year 1930 and planted a crop that spring.

Mrs. Wolfe testified: "Plaintiff had night sweats and did not sleep well; that he would wake up and be hot; that she would rub her hand over his head and it would be wet and he would feel hot and he would throw the cover back; that such continued from July until the time of the trial; that he had the severe cold for two or three weeks; that he weighed about 175, and weighed at the time of the trial 153 with his clothes on."

During the period that plaintiff worked for the American National Insurance Company from December 10, 1928, to February 4, 1929, he was paid $233.55.

During the period that he worked for the Athletic Tea Company from February 20, 1929, to May 22, 1929, he was paid as follows: February 20, 1929, $2.50; February 27, 1929, $12.50; March 6, 1929, $20; March 13, 1929, $20; March 20, 1929, $25; March 27, 1929, $25; April 3, 1929, $25; April 10, 1929, $25; April 17, 1929, $25; April 24, 1929, $30; May 1, 1929, $30; May 8, 1929, $30; May 15, 1929, $22.50; May 22, 1929, $8.32.

During the period that plaintiff sold cars from June 15, 1929, to October, 1929, he was paid $80 per month.

Dr. Sams, a witness for plaintiff, testified that he examined plaintiff on or about the 10th day of August, 1928, and that the result of his examination and the history given him by plaintiff was that plaintiff had tuberculosis and that the trouble was in the left lung.

Dr. Sams also testified that the next time he saw plaintiff was on April 3, 1929, on which occasion he made another examination of plaintiff, from which he came to the same conclusion that he had formed at the first examination. The following appears in the record as part of Dr. Sams' testimony: "He further testified that upon seeing plaintiff personally at the time of taking the witness' deposition, to-wit: May 23, 1930, the physical appearance of the plaintiff was very much the same as it was when he saw him at that time (presumably April 3, 1929) and that he did not recollect whether the plaintiff seemed any heavier then than he was at the time of the deposition, but that his general physical appearance was very much the same as it was when he saw him on April 3, 1929."

Dr. Sams was asked the following questions and gave the following answers:

"Q. What effect would it have upon the health of a tubercular person to continue in labor although he might labor some, what effect does it have? A. You would expect it would aggravate the trouble if they continued to work.

"Q. Doctor, I will ask you this hypothetical question: Suppose Glenn E. Wolfe on August 10th showed by a physical examination active tuberculosis, and on April 3, 1929, not quite a year thereafter the examination of them showed that he had active tuberculosis in the left lung, what would you say would be proper for a human being so affected? A. That he should put himself under proper conditions avoiding work until they found out whether the trouble could be arrested or cured.

"Q. Can you arrest active tuberculosis in the lung? A. It is done."

Plaintiff introduced other physicians who examined him in May or June, 1930. They testified that plaintiff had active tuberculosis and that a man with active tuberculosis could not work without risk of aggravating the disease.

At the conclusion of all the testimony the defendant moved the court for an instructed verdict for the defendant. The motion was denied. A verdict was returned for plaintiff which included an attorney's fee of $500 on each count. Defendant has assigned numerous errors. The first is that the court erred in not directing a verdict for the defendant

on the ground that the evidence did not show that plaintiff was prior to the termination of his insurance totally and permanently disabled to such an extent that he was thereby rendered wholly, continuously, and permanently unable to perform any work for any compensation of financial value.

The policies involved were life policies. Each had a total and permanent disability clause. The disability insured against is limited to that by which the insured, while the policy is in force and effect, is rendered wholly, continuously, and permanently unable to perform any work for any kind of compensation of financial value.

There is no ambiguity as to the measure provided to determine the disability or incapacity insured against. That measure is inability wholly, continuously, and .permanently to perform any work for any kind of compensation of financial value. There is therefore no ground for construction. Commonwealth Casualty Co. v. Aichner (C. C. A.) 18 F.(2d) 879.

The views of the trial court are given in the instruction to the jury. With reference to the issues involved, the court said: " * * * It is practically admitted here that the employment of the plaintiff was terminated on the 23rd of August, 1928. He began on the 20th of April, 1928, received his two contracts of insurance on April 25th and June 1st, 1928, and then, according to all the testimony that I regard as uncontroverted, his contract of insurance terminated—I will put it that way—on the 23rd of August, 1928, by reason of the cessation of his employment. So that according to his allegations, and he seeks to recover upon the policy upon the theory that while this contract was in force, or while these contracts were in force, and while he was an employee of the defendant he became totally and permanently disabled, and that this total disability was continuous throughout his entire life and that it wholly incapacitated him from doing any work for compensation of financial value.

"Now that is the allegation and that is the issue.

"Now then, gentlemen, the defendant on its part in its answer says, in substance, that while these contracts were issued and while the plaintiff was in its employ within the dates named by the court, yet it says, he did not become totally incapacitated within the purview of the policy. * * *

"Now then, gentlemen, there is your issue.

The question for you to determine in this case is whether or not the plaintiff on August 10, 1928, while he was yet an employee of the defendant, became totally and permanently incapacitated to perform any work for compensation of financial value. That is the question."

The court in his instruction defined "total disability" in practically the same terms used by the Supreme Court of Georgia in the case of Cato v. Aetna Life Insurance Co., 164 Ga. 392, 138 S. E. 787, 791. The policy in that case was very similar to the policies in this case. In that case the Supreme Court of Georgia affirmed the lower court in directing a verdict for the defendant.

After stating the issues as above, and after reviewing the evidence the lower court in this case said:

"Now here is how I view the law, gentlemen, on the question of his several employments. He worked say three weeks for the basket factory, he worked say three days in the orchard where he picked apples, he worked for an insurance company as a collector for nine weeks, I think counsel computed the time, in Kansas City; he worked for the Athletic Tea Company for three months; he then came back to his home and he has done some chores about the house, he has plowed some, he has engaged in various kinds of work. Now if you gentlemen when you consider this case and consider this employment, as I have said to you here before, if you gentlemen should be of the opinion that he continued to work when common prudence would have required him to desist, and care and prudence demanded and required him to desist and he failed to desist by going on and working, I understand, gentlemen, that under the law he is not entitled to recover and that is true even though he may have worked to his hurt. That is to say he was actually able physically to take hold, as I understand the law, a man is totally disabled when working will hurt him although he can work, as I read to you awhile ago, or rather as I instructed you, that although he can work, makes a physical effort, yet if it is harmful to him, then if common prudence requires he desist from that work, it is his duty to do so and if he persists in working when prudence requires him to desist and declines to desist, then, gentlemen, as I understand plaintiff is not entitled to recover. On the other hand, I am going to submit to you gentlemen the question as to whether or not plaintiff in this exercised prudence and judgment in view of what he said about his aches

and pains and suffering, if any, whether he exercised prudence in desisting from the special line of employment he undertook to perform. In other words, I don't understand there was any law would forbid him from testing out various kinds of employment to ascertain whether or not he might carry on that employment and if when he had tested out the employment and if prudence then required him and care for his own health required him to desist from his work, he did not desist from it, then plaintiff is entitled to recover.

"Now then you gentlemen have before you the periods that this plaintiff worked for the various companies. I have given you approximately the dates, I think, he worked. Now it is for you gentlemen to say, whether or not he was physically able to work without harm to himself and whether prudence and care required him to desist from that work, and whether he persisted in it notwithstanding the fact that prudence would have required him to desist. Now, gentlemen, I thus instruct you because the plaintiff in this case is not entitled to do these acts that would render him a charge—that is would create a liability upon this defendant. In other words, if by prudence and care he could have recovered his health and if prudence and care required him to do that, then this plaintiff—this defendant ought not to be required to pay for his imprudence in bringing upon himself a permanent affliction that would not be permanent except for his imprudence. Now it is for you gentlemen to say from the evidence in this case whether in all these several engagements or several employments, whether or not he worked at such employment just so long as prudence would permit him to work and then desisted from such work when prudence and good judgment and care for his own heatlh demanded of him that he should cease such employment. I think you understand now what the court means by that instruction."

The sentence with reference to "testing out various kinds of employment" was not warranted by the contract, nor by the issues as stated by the court, nor by the evidence. Each form of employment referred to was a "kind of work," and was engaged in for a "compensation of financial value."

Upon the issues and the facts as stated by the court, the motion of defendant for a directed verdict should have been sustained. That conclusion being decisive of the case, the other errors assigned need not be considered.

The case is reversed and remanded.