## METROPOLITAN LIFE INS. CO. v. FOSTER.

### No. 6811.

Circuit Court of Appeals, Fifth Circuit.

Oct. 31, 1933.

J. M. B. Bloodworth and W. H. Smith, both of Atlanta, Ga., for appellant.

John T. Dennis and Thomas J. Lewis, both of Atlanta, Ga., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The appellee, Ras E. Foster, on a claim of total disability, obtained judgment against Metropolitan Life Insurance Company, which by a group policy had insured the employees of Central of Georgia Railway Company, he being one of them. The group policy was primarily one of life insurance, but contained this provision: "Total and permanent disability benefits. Upon receipt at the home office in the City of New York of due proof that any employee while insured hereunder and prior to his sixtieth birthday has become totally and permanently disabled as

the result of injury or bodily disease so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit the Company will in lieu of the payment at death of the insurance on the life of the said employee as herein provided pay equal monthly instalments as hereinafter designated." The policy refers to a certificate to be issued to each insured employee, and that issued to Foster upon which also he sued contains this: "Total and permanent disability benefits. Any employee shall be considered as totally and permanently disabled who furnishes due proof that as the result of bodily injury suffered or disease contracted while his insurance was in force and prior to his sixtieth birthday he is permanently, continuously and wholly prevented thereby from performing any work for compensation or profit." It was proven that Foster at the age of thirty-eight, while working as a brakeman, got his left arm crushed so that amputation at the shoulder resulted. He has done no work since, though he testifies that he has sought for it. Relying solely on his own evidence, he claims to be unable to work because of nervousness. He denies that his former employer offered him a job as a crossing watchman, crew caller or train caller, often filled by one-armed men, though the railroad officials testify that the offer was made and declined with no claim by him of inability to work. Among the errors assigned on the trial are the refusal to give a written charge as follows: "I charge you that total disability from bodily injury in accordance with the terms of the policy of insurance sued on means a disability resulting from bodily injury which permanently prevents the plaintiff from engaging in any occupation or performing any work for compensation or profit"; and the giving of this one: "The total and permanent disability insured against does not necessarily imply an inability to do any work at all, or that the person must be bedridden, but such impairment of capacity as renders it impossible for the disabled insured to follow continuously or substantially without serious impairment of health his regular occupation or any gainful occupation for which he was equipped by training or experience. * * * However, the question of whether the plaintiff did or did not work is not controlling on the issues involved in this case but the question to be determined by you is whether the plaintiff was able to follow continuously and substantially his regular occupation or some other gainful occupation within his training and

experience without injury to his health as I have heretofore charged you."

The propriety of the charge depends upon the construction of the contract, which is to be found both in the main policy and the individual certificate issued to Foster, each referring to the other. The former describes the disability which will mature the insurance as that which prevents one from engaging in any occupation and performing any work for compensation or profit; while the certificate defines it as that which permanently, continuously, and wholly prevents one from performing any work for compensation or profit. The langage of the contract, though formulated by the company, is to be taken in its usual and ordinary sense. Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 14 S. Ct. 379, 38 L. Ed. 231. The parties were free to contract for any risks they chose, adjusting the premium charge to the risks assumed. Hawkeye Commercial Men's Association v. Christy (C. C. A.) 294 F. 208, 40 A. L. R. 46. We have no more right to enlarge the liability by artificial construction of the policy than to increase the penalty of a bond or raise the face of a promissory note. This policy is not primarily a health and accident insurance designed to indemnify for loss of wages in an employment, but is annually renewable life insurance. Ill health and accident are introduced to save the insurance when by a total and permanent disability it is likely to be lost because it cannot longer be carried, and the amount of it is thereupon made payable in installments beginning at once instead of at death. Thus to accelerate the maturity of the policy the parties have agreed on the necessity of a disability of the sort described to be a substitute for the death that must otherwise have occurred. It is not surprising that the disability to be recognized under these circumstances is to be really a total one. There is no occasion to strain the words as has sometimes been done when health and accident insurance is the sole object of the policy, in order to make it afford a reasonable protection. In such policies, where total disability is specified without further explanation, it has often been held to mean inability to carry on the occupation in which insured was engaged, especially when that occupation is described in the making of the policy. Where the policy speaks of a disability which prevents the insured from carrying on "his occupation," the reference is clearly to his usual occupation at the time of the disability, and ability to carry on some

other occupation or work is no defense. Such was the language of the policy in Metropolitan Life Ins. Co. v. Bovello, 56 App. D. C. 275, 12 F.(2d) 810, 51 A. L. R. 1040; and, in U. S. Fidelity & Guaranty Co. v. McCarthy (C. C. A.) 50 F.(2d) 2. In Albert v. Order of Chosen Friends (C. C.) 34 F. 721, 723, the policy referred to inability to carry on insured's "usual or some other occupation." His usual occupation was that of a barber, which because of injury he could not pursue, but, being able to conduct, and actually conducting, a restaurant, he could not recover. The language of the policy is not quoted in the report in Standard Accident Co. v. Bittle (C. C. A.) 36 F.(2d) 153, but it was a health and accident policy, and the original record shows that no contention arose touching the insured's ability to carry on any occupation beside his usual one. The decisions on war risk insurance relate to the definition of total disability which was made by a regulation of the Secretary of the Treasury a term of the contract, and are of little relevancy here.

In Prudential Ins. Co. v. Wolfe (C. C. A.) 52 F.(2d) 537, 541, a group policy defined total disability as inability to do "any work for any kind of compensation," and the words were held to mean what they said. This case cites as supporting it Cato v. Ætna Life Ins. Co., 164 Ga. 392, 138 S. E. 787, which also involved a group policy worded much like the one at bar, but the question presented was the totality of insured's disability to work in his usual occupation and not his inability to take up some other work. Without any analysis and discussion of the words of the policy before it, the Georgia court held that the tuberculous weaver was not shown to have been totally disabled in his usual occupation; but it discussed the meanings attributed to the term "total disability" in other cited cases and used expressions much like those in the charge in the case at bar. These expressions were broadly applied by the Georgia Court of Appeals in Marchant v. New York Life Ins. Co., 42 Ga. App. 11, 155 S. E. 221, and New York Life Ins. Co. v. Thompson, 45 Ga. App. 638, 165 S. E. 847. We doubt the Supreme Court having intended its language to be a general construction of the words of the policy before it, for the cases cited dealt with very dissimilar provisions, and we find ourselves unable to approve the interpretation of it in the decisions of the Court of Appeals. The question being one of general law, it is the duty of a federal court to follow its own judgment upon it. Carpenter v. Providence Washington Ins. Co., 16 Pet. 495; 10 L. Ed. 1044; Hawkeye Commercial Men's Association v. Christy (C. C. A.) 294 F. 208, 40 A. L. R. 46. Many decisions of the state courts on various policy provisions are collected in the notes appended to cases in 38 L. R. A. 529; 23 L. R. A. (N. S.) 352; L. R. A. 1917B, 107; 24 A. L. R. 203; 79 A. L. R. 857.

We are of opinion that under the policy before us an inability to follow insured's regular occupation or others within his training and experience would not be total disability if there was work not within his training and experience but within his capacity which without injury to his health he could perform for compensation or profit. Of course, the work must be substantial and not trifling, amounting to a job, an occupation. The judge might well charge as he did that a total disability under this policy does not necessarily imply an incapacity to do any work at all, or that the person must be bedridden, but he erred in restricting the ability to work to the regular occupation of the insured as brakeman and to those occupations within his training and experience, all of which the insured testified required two hands. We think that, if he was able mentally and physically to hold a job as crossing watchman or crew caller, or in other lines than railroad work, and thereby to earn a substantial wage or profit, he was not totally disabled within the meaning of this policy, and the jury should have been so instructed. The evidence shows, and it is common knowledge, that a man with only one arm or leg, if not otherwise incapacitated, may do much valuable work and engage in many gainful occupations, and there are many cases so holding. Metropolitan Life Ins. Co. v. Wann (Tex. Civ. App.) 28 S.W.(2d) 196; Metropolitan Life Ins. Co. v. Barela (Tex. Civ. App.) 44 S.W.(2d) 494; Buckner v. Jefferson Standard Life Ins. Co., 172 N. C. 762, 90 S. E. 897; Hurley v. Bankers' Life Co., 198 Iowa, 1129, 199 N. W. 343, 37 A. L. R. 146; Jefferson Standard Life Ins. Co. v. Parten, 30 Ga. App. 245, 117 S. E. 772; Ind. Life Endowment Co. v. Reed, 54 Ind. App. 450, 103 N. E. 77. The policy before us expressly recognizes the loss of both hands or both feet as a total disability, implying that the loss of one only would not in itself be such. Whether through some additional affliction such as nervousness the assured has been continuously and wholly unable to do any work for remuneration or profit as he testified is of course a jury question.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.