23150.   PRUDENTIAL INSURANCE COMPANY OF
AMERICA *v.* BAKER.

DECIDED SEPTEMBER 18, 1934.

*Estes Doremus, Spalding, MacDougald & Sibley,* for plaintiff in error.

*T. J. Lewis,* contra.

BROYLES, C. J. Ira L. Baker brought suit in the municipal court of Atlanta, against the Prudential Insurance Company of America, on a group-insurance policy, and procured verdict and judgment. The defendant filed a motion for a new trial, and, upon the overruling thereof, appealed to the appellate division of the court. The appellate division affirmed the judgment of the trial court in overruling movant's motion, and upon this judgment the defendant company assigns error in its bill of exceptions to this court.

The controlling issue in the case is relative to the total disability of the insured. The evidence, though conflicting in some respects, was sufficient to show that the plaintiff was totally and permanently disabled within the meaning of the contract of insurance. There was testimony that he had sustained a fracture of the "ileum" bone, and "a misplaced sacroiliac joint;" that his right hip was broken; that he had an "impediment of the circulation in his left leg" known as phlebitis, which caused it to swell; that "he will always have a swollen leg. That is due to the impediment of the circulation, the return of the venous blood in the leg, and there will always be a stagnation or impediment to the return of the flow of the blood. That is permanent, he will have it the rest of his life;" if he stood on this leg it would make it worse; one leg was shorter than the other; plaintiff used crutches if he got about at all; the function of the ilium bone (which was fractured) "is for the attachment of muscles, almost entirely;" "walking on that leg would have something to do with the pulling of the muscles or ligaments of that bone—the ilium—or the moving of the back;" plaintiff, by virtue of education and training, was equipped only to perform the duties of a brakeman or a farmer, and because of his physical disabilities he could perform neither; he could not get in a wagon, and had not done any farming or work since he was hurt. The jury, under the foregoing and other evidence adduced on the trial, and the instructions of the court as to what constituted total disability, were authorized to determine that the plaintiff was totally disabled.

There being evidence to support the finding of the jury on this question of fact, the remaining question for consideration by this court is whether the instructions of the trial judge as to what constituted total disability were correct.

The contract of insurance provides that if the insured "shall become totally and permanently disabled or physically and mentally incapacitated to such an extent that he or she, by reason of such disability or incapacity, is rendered wholly, continuously, and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime, the amount of insurance payable at death from natural causes will be paid to said employee in monthly installments during two years." The only special ground of the motion for a new trial complains of the court's charge on total disability, which is in part as follows: "Total disability, as used in this particular contract, exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he must depend for a living, and if the insured is incapacitated from performing any substantial part of his ordinary duties a case of total disability is presented although he is still able to perform some part of his work. Total disability is the inability to do substantially all of the material acts necessary to the transaction of the insured's business or occupation in substantially his usual or customary manner. . . Total disability does not mean absolute physical inability to work at one's occupation or to pursue some occupation for wages or gain, but it exists if the injury or disease is such that common care and prudence require him to desist and he does desist from the transaction of his business. . . The words 'total disability' as used in the policy of insurance introduced in evidence, and which will be before you in this case, do not mean, as their literal construction would require, a state of absolute helplessness which can result only from loss of reason, since, as long as one is in full possession of his mental faculties, he is capable of transacting some part of his business, whatever it may be, although he is incapable of physical action. On the contrary, the courts who have considered this provision of the contract hold that total disability, as contemplated by the agreement, is inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, substantially in his customary and usual manner. . .

The insured is deemed totally disabled when he is no longer able to do his accustomed tasks and such work as he has only been trained to do and upon which he must depend for a living." Movant contends that the charge is error, since, "under the terms of the contract of insurance here involved, total disability does not exist except where the insured is unable to do any work or engage in any occupation for gain, whether this occupation be his usual occupation or means of livelihood or not." It contends, in substance, that if the insured is capable of doing any kind of work for any kind of compensation of financial value, however limited either may be, he is not totally disabled within the meaning of the policy, and it attempted to prove that the insured could operate or supervise a farm by telling others what to do. We can not agree with that contention. The contract must be given a reasonable and liberal construction in favor of the insured, and if the position of plaintiff in error were sound, it would be almost impossible for the insured to recover unless he were insane or had lost his reasoning faculties. For instance, a man who had lost both arms, both legs, and both eyes, would certainly be totally disabled; and yet he might be able to receive reports and give instructions to others as to the operation of a farm. Moreover, the policy shows that such a construction as is insisted upon by plaintiff in error was not within the spirit of the contract or the intention of the contracting parties, as it specifically provides that "the entire and irrevocable loss of the sight of both eyes, or of the use of both hands or of both feet, or of one hand and one foot will be considered total and permanent disability." Obviously, one who had sustained any one of the above losses, which under the policy constitute total disability, could engage in some kind of occupation yielding remuneration, so long as he retained his mental faculties; and the policy shows further that mental incapacity is not essential to total disability, as it provides that total disability may exist if the insured is "physically or mentally incapacitated."

The charge complained of strictly follows the decisions of the Supreme Court and of this court as to what constitutes total disability. In *Marchant* v. *N. Y. Life Ins. Co.*, 42 *Ga. App.* 11 (155 S. E. 221) the 2d headnote is as follows: "In a suit to recover benefits for a total disability as provided in an insurance policy which defined a total disability as one whereby the insured is

'prevented . . from engaging in *any occupation whatsoever for remuneration or profit,*' evidence that the insured had sustained a bodily injury by reason of which he was forced to desist from substantially all of the usual and customary duties of the occupation being pursued by him at the issuance of the policy would have authorized a finding of total disability within the meaning of the contract." (Italics ours.) And the 5th headnote states that even though the insured performed a small percentage of his normal business, "the jury could have found that the insured had sustained a total disability within the intent and purview of the policy." In *N. Y. Life Ins. Co.* v. *Oliver,* 45 *Ga. App.* 756 (165 S. E. 840), the policy provided that in order to be totally disabled, the insured must be incapacitated from "engaging in any accupation whatsoever for remuneration or profit," and this court held that he was totally disabled in the sense of the policy when "wholly disabled from pursuing the usual and customary duties of his employment on which he depends for a living" and "is incapacitated from performing any substantial part of his ordinary duties . . although he is still able to perform some parts of his work." See also *N. Y. Life Ins. Co.* v. *Thompson,* 45 *Ga. App.* 638 (165 S. E. 847), where the same principle is announced, and wherein it is held that "Policies of insurance will be liberally construed in favor of the object to be accomplished, and provisions therein will be strictly construed against the insurer." The decisions above cited and the charge of the court complained of in the instant case follow the ruling of the Supreme Court in *Cato* v. *Ætna Life Ins. Co.,* 164 *Ga.* 392 (138 S. E. 787), where it was held that even though the policy provides that in order to be totally disabled the insured must be incapacitated from pursuing "any occupation for wages or profit," this "does not mean absolute physical inability to work at one's occupation, or to pursue some occupation for wages or gain." The 2d, 3d, and 4th headnotes of the *Cato* case are made the corresponding headnotes of this decision. The terms "any occupation for wages or profit," "any occupation whatsoever for remuneration or profit," and "any work for any kind of compensation of financial value," as used in policies of insurance in defining total disability, are substantially the same in meaning.

However, it is earnestly contended by the able counsel for the insurance company that the decision in the *Cato* case is not con-

trolling in this case, because of the difference in the facts of the two cases and the difference in the language of the provisions of the policies of insurance as to what should constitute "total disability." We have carefully compared the language of the two policies, and while that of the contract in the instant case defining total disability is more elaborate than that of the contract in the *Cato* case, we can see no real *material* difference between the language of the two contracts or between the facts of the two cases. If there be any conflict between the decision of this court in *Whitton* v. *American National Insurance Co.,* 17 *Ga. App.* 525 (87 S. E. 827), relied on by counsel for the plaintiff in error, and the decision of the Supreme Court in the *Cato* case, we are bound to follow the decision of the Supreme Court. In our opinion the instant case is controlled by the ruling in the *Cato* case; and, under that decision and the facts of this case, the verdict was authorized by the evidence, the charge of the court was not erroneous, and the appellate division of the municipal court properly affirmed the judgment of the trial judge overruling the motion for a new trial.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*