24100. TARANTO *et al. v.* RICHARDSON, tax-collector.

DECIDED FEBRUARY 28, 1935.

*W. G. McRae, G. G. Finch, R. E. Church,* for plaintiffs.
*Carter, Carter & Johnson,* for defendant.

MacINTYRE, J. In the years 1928 and 1929 the plaintiffs were engaged in the business of operating a billiard parlor in the City of Atlanta. In 1927 the General Assembly passed a general tax act (Ga. L. 1927, p. 56) which prescribed a tax upon persons, firms, or corporations operating a billiard parlor in cities with a population of 100,000 or more. In January, 1928, the plaintiffs filed an action in the superior court against Richardson, as duly authorized tax-collector of Fulton County, to restrain him from collecting the above tax on the ground that the act imposing the tax was unconstitutional; and on the same day the judge of the superior court issued a temporary restraining order as prayed for. This order was made permanent by the court on June 7, 1929. The petition alleges that Richardson, as tax-collector of Fulton County, in the month of April, 1928, *"in violation of the temporary restraining order,"* did threaten the plaintiffs with imprisonment and confiscation of their property unless they paid the tax prescribed in the act; and that petitioners, "under an urgent and immediate necessity therefor to

prevent immediate seizure of their persons and property by the defendant," paid the sums demanded "as a tax levied under paragraph 20 of said act of 1927, and that said amounts aforesaid were wrongfully collected from petitioners by the defendant, under color of his office." This suit is brought against the tax-collector on his bond, to recover these amounts allegedly wrongfully exacted. A general demurrer to the petition was sustained by the court and the case dismissed. Plaintiffs take exception to this ruling.

The first question which presents itself to this court and which, under the view we take of the case, is the controlling question of the right of the plaintiffs to recover the amounts sued for, is whether or not payment of the tax was *voluntary*. Section 4317 of the Civil Code of 1910, which had been adopted in the Code of 1895, constitutes our starting point in determining this question. It provides that "Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and can not be recovered back, unless made under an urgent and immediate necessity therefor or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." This section is apparently a codification of the following cases: *Arnold* v. *Georgia Railroad &c. Co.*, 50 *Ga.* 304; *White* v. *Rowland*, 67 *Ga.* 546 (44 Am. R. 731); *First National Bank* v. *Americus*, 68 *Ga.* 119; *McGehee* v. *Coleman*, 69 *Ga.* 581; *Jenkins* v. *German &c. Congregation*, 58 *Ga.* 125; *Jackson* v. *Atlanta*, 61 *Ga.* 228; *Commissioners of Thomson* v. *Norris*, 62 *Ga.* 538; *Mayor &c. of Savannah* v. *Feeley*, 66 *Ga.* 31, and *Tatum* v. *Trenton*, 85 *Ga.* 468 (11 S. E. 705). In deciding the point presented, the pertinent part of the above code section is as follows: "Unless made under an urgent and immediate necessity therefor, . . or to prevent an immediate seizure of person or property." It must also be taken into consideration that our courts have held that § 4317, quoted above, should be construed in connection with § 4116 (*Finch* v. *Cox Co.*, 19 *Ga. App.* 256, 91 S. E. 281), which defines what amounts to *duress* in law as follows: "Duress consists in any illegal imprisonment or legal imprisonment used for illegal purpose, or threats of bodily or other harm, or other means similar to or tending to coerce

the will of another, and actually inducing him to do an act contrary to his free will. It would seem the true rule therefore is that in order for the payment to be involuntary it must be paid under *duress,* and that if payment is made under an "urgent and immediate necessity therefor . . or to prevent an immediate seizure of person or property," it is made under duress.

It is to be conceded that *mere threats* of prosecution of a person, who has committed no crime, or by a person who has apparently made no moves toward the carrying out of such threats, do not amount to duress in law. *Sutton* v. *Hurley,* 12 *Ga. App.* 312 (77 S. E. 218) ; *Bond* v. *Kidd,* 1 *Ga. App.* 798 (57 S. E. 944). Upon first consideration, it would seem that the Supreme Court has, in the case of *Williams* v. *Stewart,* 115 *Ga.* 864 (42 S. E. 256), laid down a rule against the right of the plaintiffs to recover in this case. It was there held: "When an officer not authorized to issue a warrant notifies a person that he will have him arrested on a warrant and prosecuted unless he pays a certain tax, and such person, because of such threat, pays the tax, the payment is voluntary, under the Civil Code, § 3723 [1910, § 4317], and the money paid can not be recovered." The effect of this decision is to hold that a *mere threat* to have one prosecuted, where no warrant had *actually* been issued, and there exists no urgent or immediate necessity for the payment of the money in order to escape arrest, such as if the *warrant* had been sworn out *at the time of the threat* and his person about to be seized unless the money was paid, although the *threat* might be carried out by the officer making it, can not be considered as duress, and a payment of taxes under such threat would be voluntary. The Supreme Court has, however, seemingly ruled directly contrary to the *Williams* case, in *Dennison Mfg. Co.* v. *Wright,* 156 *Ga.* 789 (120 S. E. 120). The *Dennison* case was an action by a foreign corporation to recover a tax paid to the tax-collector by its agent, its contention being that the act prescribing this tax was unconstitutional. In the petition, to meet the objection that the payment was voluntary, it was alleged that "William A. Wright, who was and is the comptroller-general of Georgia, demanded that Christie, as the agent of said company, pay certain license and occupation tax for 1919 of $600 *or be subject to prosecution for failure so to do and doing business without registering and paying said tax.*" Hines, J., in discussing whether

or not, under the above allegation, the payment was voluntary, said: "It is unquestionably true, that in case of the payment of an illegal tax the same can not be recovered back, 'unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule.' [Citations.] In *Hoke* v. *Atlanta* [107 *Ga.* 416, 33 S. E. 412], this court recognized the difference between the payment of an illegal tax, when no mode of collecting the tax was provided except an ordinary proceeding at law or in equity, and such payment and failure to pay subjects the taxpayer to prosecution and punishment. In the former case, a payment would be voluntary, though made under protest. In the latter case, when made to prevent prosecution and under protest, the payment would not be voluntary. The petition alleges that the defendant, as comptroller-general, demanded that Christie as agent of this company pay said occupation tax for 1919 of $600, or be subject to prosecution for a misdemeanor for failure to do so; and *that to avoid trouble* [italics ours] the payment of this tax was made. The demurrer admits these facts, and they are to be taken to be true. The general tax act requires the agent or representative of any foreign corporation to register and pay the occupation tax therein imposed, and his failure to do so subjects him to prosecution for a misdemeanor. Acts 1918, p. 43. Under these facts, we can not say that the payment of this tax was voluntary."

Upon investigation of the act of 1901, prescribing a tax on immigrant agents, which was under consideration in the *Williams* case, and the act of 1918, which prescribed the tax on agents of foreign corporations, it is found that they are both identical, in that they both provide a penalty for failure to register and pay the tax, as a misdemeanor. In the *Dennison* case, which arose under the act of 1918, there was no authority invested in the comptroller-general to *issue* a warrant, or any other unusual powers given him to enforce the act. It can be readily seen that the reasoning used in the *Williams* case could have been used in the *Dennison* case. The *Williams* case, however, was a decision rendered since 1897 by less than a full bench (Judge Lewis being absent), and therefore was not binding authority on the Supreme Court. The ruling in the *Dennison* case, being a decision by a full bench, is there-

fore binding on the Court of Appeals as a precedent, regardless of whether the Supreme Court formally reviewed the prior decision or formally mentioned it at all. If, therefore, the facts in the present case bring it within the rulings made in the *Dennison* case, this court will be bound to follow that decision and hold that the payment here made was involuntary. Thus, while we recognize the rule now to be that if a taxpayer is threatened with prosecution for failure to pay a tax (where such failure is made a misdemeanor by the act prescribing the tax), by one with governmental authority to carry out that threat by proper proceedings, and the taxpayer pays the tax under such threat, his payment of the tax is to be considered as involuntary, and therefore it could be recovered back through proper proceedings, we think that the facts presented in this case are different, and require a different ruling from that in the *Dennison* case. While it is true that the plaintiffs were threatened with arrest and confiscation of their property by one having governmental authority to carry out such threat at the time they paid the tax, yet it is also true that they had had at that time a restraining order issued against the tax-collector to prevent him from collecting this very tax which is now alleged to have been paid under duress. The petitioners acted under no mistake of law or fact. They were charged with notice that a court, having ample jurisdiction to grant them all relief against the exaction of an illegal tax, had actually stayed the collection of the money which they now allege they paid under duress. They had appealed to the law for relief against the payment of the tax and had been granted the relief prayed for. It would therefore be difficult to see how it could be said, where no warrant had been issued by the tax-collector and there was no *immediate* necessity of paying the tax to prevent an *immediate* seizure of their person and property, that payment of a tax under such circumstances was *involuntary*. The tax-collector had not sworn out a warrant and it is not shown that at the time the threat was made and the tax paid they were compelled to pay it to prevent *immediate* arrest and detention of their person or confiscation of their property; and thus were "entrapped by sudden pressure into making such payment," and had no other means of escaping an existing or imminent infringement of their rights of person or property. *Strange* v. *Franklin*, 126 *Ga.* 716 (55 S. E. 943). The threat must necessarily have

been an idle one on the part of the tax-collector, for he was chargeable with notice that he had been restrained by a court of competent jurisdiction from collecting that very tax. Any attempt made by the tax-collector to collect the tax would necessarily have been in violation of the order of the court and would have subjected him to a rule for contempt. The allegations of the petition present an example of *pure threat* without any color of power or authority to make it effective.

We think, therefore, that the petition as amended did not set out a cause of action, for the reason that the facts alleged show that the payment was voluntary and therefore could not be recovered. See *Eibel* v. *Royal Indemnity Co.*, 50 *Ga. App.* 206 (177 S. E. 350).

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*