## 25033. NEW YORK LIFE INSURANCE COMPANY
### *v.* WILLIAMSON, for use, etc.

Decided March 17, 1936.

*A. S. Bradley, P. W. Bradley,* for plaintiff in error. ·

*I. W. Rountree,* contra.

Sutton, J. This suit is against the New York Life Insurance Company on two policies of life insurance containing total-disability clauses. On August 27, 1918, the company issued to the plaintiff the two policies sued on, one for $2000 and the other for $3000. They were assigned to the First National Bank of Vidalia. The plaintiff paid the annual premiums of $152.50 to and including their anniversary date, August 23, 1930. Each policy contained the following provisions: "And the company agrees to pay to the insured one tenth of the face amount of this policy per annum, during the lifetime of the insured, if the insured becomes wholly and permanently disabled, before age 60, subject to all the terms and conditions contained in section 1 hereof." Section 1 of the policy provided: "Whenever the company receives due proof, before default in the payment of premiums, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is, and will be *presumably* [italics ours] thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then ex-

isted for not less than sixty days . . then commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will on each anniversary waive payment of the premium for the ensuing insurance year, and in any settlement of the policy the company will not deduct the premiums so waived. . . One year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured a sum equal to one tenth of the face of the policy, and like sum on each anniversary thereafter during the lifetime and continued disability of the insured. . . The company may at any time and from time to time, but no oftener than once a year, demand due proof of such continued disability; and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made." It appears that on April 28, 1928, while the policies were in force, the plaintiff was shot with a 45-caliber pistol in the hands of a drunken negro man, two bullets striking his right thigh, shattering the bone and causing his leg and bone to become infected, finally resulting in the shortening of that leg and the stiffening of the knee joint. The plaintiff set up that he made due proof of his disability, and that the insurer refused to pay him, although he was totally and permanently disabled. The plaintiff also set up that he continued to pay premiums until 1931, when he refused to pay any further premiums. He set up that he submitted proper proofs in 1928, 1929, and 1931, as well as 1932, and that after receipt of same and investigation the insurance company each time refused payment on the ground that he was not totally and permanently disabled as provided in the contracts of insurance. He sought recovery of the annual premiums paid by him on August 23, 1928, August 23, 1929, and August 23, 1930, and of disability benefits beginning August 23, 1929; and by amendment, for each policy year thereafter through the year 1934, of the 25 per cent. penalty and reasonable attorney's fees allowed by law for failure to pay within sixty days after demand, when in bad faith, and accrued interest.

The defendant denied its liability for any sum, setting up that the plaintiff was not "wholly and permanently disabled and permanently and continuously prevented from engaging in any occupation whatever for remuneration or profit," and that the plain-

tiff failed to "submit due proof of any disability which would entitle the assured to disability benefits within the terms" of the policies. The defendant amended its answer, admitting that the last proof furnished it in 1932 was proper and showed that the plaintiff was disabled at that time within the meaning of the insurance contracts, and that while the plaintiff was entitled, under the policies and from the proof submitted in 1932, only to waiver of premiums beginning on August 23, 1932, and to benefits beginning the next anniversary year, August 23, 1933, the defendant did waive premiums beginning August 23, 1931, and did offer to pay disability benefits beginning August 23, 1932, which offer was rejected by the plaintiff. The defendant set up that it did not continue such offer, but only admitted such liability as is really due, that is, waiver of premiums beginning August 23, 1932, and benefits beginning August 23, 1933. The defendant struck the allegation of its answer that the plaintiff was not totally and permanently disabled, and averred that it acted in good faith in ascertaining the plaintiff's condition, and that it was not until 1932 that it received such due proof as to show that the plaintiff was so disabled, and that as soon as it received such proof it rated the plaintiff as disabled. The defendant set up that it ascertained about the assignment of the policy made by the plaintiff, and acted with due diligence and in the best of faith, and required the assignee to be made a party, and paid $1000, benefits due for 1933 and 1934 into court for proper distribution, and prayed for allowance for bringing to light such assignment, as well as other assignments made by the plaintiff. At the trial the plaintiff waived his right to recover any premium paid in 1928, and to recover the benefits for 1929. Both parties introduced evidence. The jury returned a verdict in favor of the plaintiff for $2804.60 principal, $425.96 interest to date of verdict, $451.15 penalty, and $300 attorney's fees. The verdict was for all items sued for by the plaintiff, except the items waived, and included the penalty and attorney's fees. The defendant's motion for new trial was overruled, and it excepted. A fuller and more detailed statement of the essential facts appears in the following opinion.

■ The verdict is not contrary to the law. Nor is it unsupported by the evidence, in that it does not appear that the insured furnished the company with due proof of disability, as required by

the provisions of the policies, prior to the proof of disability submitted to it in 1932. . Before the company became liable to pay to the insured or his assignees any total-disability benefits under the policies, it was incumbent on the insured to furnish proof of his disability, in sufficient compliance with the terms of the policies. This was required by the policies themselves, and under our law "Every insurer shall have a right to prescribe regulations as to notice and preliminary proof of loss [disability], which shall be substantially complied with by the assured." Code of 1933, § 56-831. Proof of disability is primarily intended to secure an adjustment between the insurer and insured, as well as to apprise the insurer of the disability, of its nature and extent, and of the claim of the insured. The insurer is entitled to the information; and in most insurance contracts, as in this case, the submission of such proof within the time and in the manner prescribed are conditions precedent to the right to recover on such a policy or to the accrual of the liability of an insurer. As appears from the evidence in this case, the insured submitted to the insurer proofs of his disability in the year 1928, again in 1929, and again in 1930, as well as in 1932. Each time the company denied liability and refused to pay the claim, on the ground that it did not appear that the insured was totally and permanently disabled as provided in the policies. Under the facts and the provisions of these policies, a jury could well find that the insured was totally and permanently disabled, and that in 1928, 1929, and 1931 he furnished to the company proofs of his disability, from which it could have ascertained that he was "presumably" totally and permanently disabled. Under these facts, we are of the opinion that the insured furnished the company with sufficient proofs of his disability. Furthermore, where the insured furnishes proof of disability, and an insurer retains the same without objection, and denies liability, this is a waiver of proof of disability. The insured testified that on account of his injury he was wholly and totally disabled to perform any work for remuneration or profit, that the injury was to his right hip and leg and rendered him wholly crippled for life, that the injury resulted from a pistol wound inflicted by a drunken negro man and that the wound had never healed. The insured testified also that he was a farmer and depended upon his labor on the farm for a livelihood; and that he

was absolutely prevented, on account of the wound and his consequent crippled condition, from performing this work or other gainful or remunerative work, or in fact any kind of useful work or occupation. There was no evidence tending to contradict this testimony of the insured. His testimony further showed that this condition had existed from the time of the infliction of the wound on April 28, 1928, to the time of the trial on October 10, 1934.

It also appeared from the undisputed evidence as follows: On September 21, 1928, about four months after the injury, the insured by letter to its general agents in Savannah, Georgia, advised the insurer of his injury and stated that he was crippled therefrom and wholly disabled from working and getting about. On October 3, 1928, the insured, in response to a reply from the company to his letter, asking for further information and proof, presented his claim for disability benefits and proof of his disability, and included his statement and that of his attending physician, these being on forms furnished by the insurer. The insured stated therein that he was wholly disabled, on account of such injury, from pursuing any occupation or performing any work for remuneration or profit. The doctor stated, in answer to a question as to whether the insured was totally disabled and prevented from engaging in any occupation whatsoever for profit or remuneration, that the insured was so disabled, and had been since the time of his injury on April 28, 1928, except that he could with great difficulty ride about a little for the past month. In answer to the question whether in his opinion the insured would be permanently, continuously, and wholly prevented for life from pursuing any and all gainful occupations, by reason of this disability, he stated "No, after one or two months will be able to perform some of duties." Thereafter, on October 10, 1928, the insurer denied liability and in a letter to the insured stated that it did not appear from the proof submitted that the insured was permanently, continuously, and wholly prevented for life from pursuing some gainful occupation, and that if the insured would inspect his policies he would find that the insurer was not liable for temporary total disability but only for permanent and total disability, and that it did not appear that the insured would always be totally disabled. The insured paid the premiums for the years 1928 and 1929. In February, 1929, the insured again made

claim for disability benefits under his policies, and again submitted his statement and that of his attending physician on forms furnished by the insurer. The insured stated that he was then wholly disabled on account of a fractured leg, and that his disability resulted from the injury herein described, which had prevented him from pursuing any occupation whatsoever for remuneration or profit since April 28, 1928. The physician stated that in his opinion the insured was wholly disabled and prevented from engaging in any occupation whatsoever for remuneration or profit, and to his knowledge had been so prevented since April 28, 1928; and in answer to the question propounded in the blank form, "Give your opinion as to whether or not the insured will be permanently, continuously, and wholly prevented for life from pursuing any and all gainful occupations, by reason of this disability?" the physician answered, "Yes, from engaging now, but it is possible in time to come there may be favorable changes." On March 16, 1929, the insurer's agents informed the insured that it did not appear he was wholly and permanently disabled, within the meaning of the provisions in the policies, in that it did not appear that he would be permanently, continuously, and wholly prevented, for life, from pursuing some gainful occupation; that the loss of the use of one leg is not considered as total and permanent disability within the meaning of the policies; that by way of reference he should look to that part of his policies specifically providing that the severance of both hands or both feet, or of one entire hand and one entire foot, would be considered total and permanent disability; and that they did not favorably consider his claim, and were closing their files on the subject.

Thereafter the insured continued to pay his annual premiums. On October 14, 1931, he again wrote to the company's agents that he should have received money from them for his disability, as provided in the policies; that he had been unable to work for nearly four years, and had made several complaints and applications to the company for compensation; that he was not going to pay any more premiums or sign any notes therefor; and that it was right that he should have his compensation, and he intended to get it by law if necessary. The company's agents replied that they did not understand the insured's letter; that they had received his other claims, but did not consider him then permanently

and wholly disabled; and that if he was now in that condition, he was requested to furnish them with information, and the matter would be taken up with the home office in New York. Thereupon the insured furnished the insurer, on February 4, 1932, with a statement or proof of disability, and stated therein that he was wholly and totally disabled as a result of the injury of April 28, 1928, and that his injury had prevented him from engaging in any occupation whatsoever for remuneration or profit since January 1, 1930. The physician attending the insured furnished the company with a statement, with that of the insured, that the insured was totally and permanently disabled from engaging in any occupation for remuneration or profit, and had been so "practically since the wound, but certainly since January 1, 1930," and that in his opinion the disability would be permanent and the insured would be permanently and wholly prevented for life from pursuing any and all gainful occupations, by reason of such disability. On April 14, 1932, the insurer wrote both to the insured and to his attorney that it still did not consider that the insured was wholly and permanently disabled and would be permanently and continuously prevented from engaging in any and all gainful occupations, and therefore would not approve his claim for benefits under the policies, and that it was closing its files relative to the matter. The insurer added that the insured's policies had lapsed for non-payment of his current premium, but that he could yet reinstate them.

It also appeared from the uncontroverted evidence that on March 7, 1929, Dr. Lucas, the medical examiner of the insurer, at the request and in behalf of the company, examined the insured and made his report to the company, stating that the insured was in good health prior to his injury on April 28, 1928, that his injury resulting in his disability was caused by a bullet wound from a forty-five calibre pistol in the hands of a drunken man, and that the insured had been prevented by reason of his disability from engaging in any occupation whatsoever for remuneration or profit since his injury; and in answering the question, in the form furnished for his report by the insurer, as to whether the disability of the insured would be permanent and prevent the insured for life from pursuing any and all gainful occupations, this doctor stated: "Can not answer, because it is yet suppurating." This

doctor stated that after a careful examination he found the insured to be wholly disabled on account of the condition of his right thigh. Dr. Baker, another physician of the company, made two examinations of the insured at the request of the insurer; and in one of his reports made on March 19, 1932, prior to the letter from the insurer to the insured and his attorney, again denying liability and refusing compensation, this doctor stated that he had examined the insured and found him disabled from a pistol wound in his right thigh, received on April 28, 1928; and in answer to the question "Give your opinion as to whether or not the insured will be permanently, continuously, and wholly prevented thereby for life from pursuing any and all gainful occupations by reason of his disability?" he stated: "This party can't do any manual labor now; and unless he improves, he can't ever do any." The physician stated that the insured had been prevented by reason of his disability from engaging in any occupation whatsoever for remuneration or profit since April 28, 1928; and in answer to the question, "After careful examination, to what extent do you find the insured disabled, and due to what cause?" this physician stated: "This party can get about, but can't do any manual labor, owing to the two pistol balls passing through his right thigh, one ball fractured the thigh bone, which is still discharging, swollen and enlarged. This man being a common laborer, he is not able to do manual labor now."

The trial was in October, 1934, and the plaintiff's attorney announced in open court that the plaintiff waived recovery of disability benefits for the year 1929. The defendant, after the institution of the suit, had withdrawn its denial of the plaintiff's disability and right to recover for the years 1933 and 1934, and thereby accepted as sufficient the proof of disability submitted in 1932. The defendant at first denied liability on receipt of this proof, stating that it did not consider the insured wholly, permanently, and continuously disabled for life from pursuing any and all gainful occupations, as provided in the policies, and did not deem him entitled to disability benefits. The verdict for benefits of 1930, 1931, and 1932 was authorized under the facts, first, in that the proofs submitted by the insured were a sufficient compliance with the policy provisions with respect to showing permanent total disability, as this term has been defined by the ap-

pellate courts of this State. Furthermore, as held above, where an insurance company receives proofs, retains them without objection, and denies liability, it waives proof of disability. Second, the uncontroverted evidence is that the insured had been engaged in doing manual labor up until the time he was disabled, and that he was totally and permanently disabled to do this kind of work, on account of the injury.

The plaintiff recovered the amount paid by him to the insurer as premiums for 1929 and 1930. He brought suit for the recovery thereof, but did not allege or prove that there was any urgent necessity for their payment, or that they were paid under a mistake of facts, or that he was induced to pay them by any fraud or artifice practiced upon him. "Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and can not be recovered back, unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." Code of 1933, § 20-1007. See also *Arnold* v. *Georgia Railroad &c. Co.,* 50 *Ga.* 304, and cit.; 2 Enc. Dig. 858, 10 Id. 300; *White* v. *Rowland,* 67 *Ga.* 557 (44 Am. R. 731); *Strachan Shipping Co.* v. *Savannah,* 168 *Ga.* 309 (147 S. E. 555); *Taranto* v. *Richardson,* 50 *Ga. App.* 851 (179 S. E. 202) et seq., and cit. So it would seem that the payment of these premiums by the plaintiff, under the facts of this case, was purely voluntary. The general presumption is that whenever one pays money to another, the money is due and the payee is entitled thereto, and its payment is voluntarily made by the payer; and in an action to recover it the burden is on him to show that the payment was not due, and that the money was not paid by him voluntarily. This rule as to voluntary payments applies to the payment of insurance premiums by the insured to the insurer. See generally 21 R. C. L. § 165 et seq., 141; N. Y. Life Ins. Co. *v.* Lecks, (Fla.), 165 So. 50; Note 14 Brit. Rul. Cas. 346; 53 A. L. R. 953, note; 75 A. L. R. 658, note; Jones *v.* Provident Savings Life Assurance Society, 147 N. C. 540 (61 S. E. 388, 25 L. R. A. (N. S.) 803, note); 32 C. J. 134; Featherstone *v.* Stonewall Life Ins. Co., 165 Miss. 164 (147 So. 305); *Hartley*

v. *Hartley,* 50 *Ga. App.* 848 (179 S. E. 245). This case is not an exception to the general rule. It is true that "money paid under a mistake of fact or in ignorance of facts may be recovered back, if the circumstances are such that the party receiving ought not in equity and good conscience to retain it." *Pine Belt Lumber Co.* v. *Morrison,* 13 *Ga. App.* 453 (79 S. E. 363); *Atlanta Telephone &c. Co.* v. *Fain,* 16 *Ga. App.* 475 (85 S. E. 791). However, "To entitle a party to recover back money which he has paid, on the ground that it was paid to the defendant through a mistake or ignorance of facts, which he sets up as showing there was no legal liability on him to pay, the plaintiff should allege and show on the trial that at the time of the payment he was mistaken as to such facts or ignorant of their existence." *Camp* v. *Phillips,* 49 *Ga.* 455; *Stern* v. *Howell,* 33 *Ga. App.* 693 (127 S. E. 775); *Bryant* v. *Guaranty Life Ins. Co.,* 40 *Ga. App.* 573 (150 S. E. 596). The plaintiff did not by his pleadings or under the evidence bring himself within the exception to the voluntary-payment rule, and therefore he was not entitled to recover premiums for the years 1929 and 1930, nor was he entitled to interest thereon, nor to recover the penalty assessed against this part of the recovery. This being true, the verdict and judgment in the plaintiff's favor for the following items were unauthorized by the evidence: Premiums for 1929 and 1930, $304.60. Interest on the 1929 premium, $54.68. Interest on the 1930 premium, $43.02. Penalty assessed on the recovery of premiums, $76.15.

The verdict, in so far as it included $300 attorney's fees and $375 as a 25 per cent. penalty on the recovery of disability benefits for the years 1930, 1931, and 1932, under the provisions of Code of 1933, § 56-706, was not contrary to law nor unsupported by the evidence. It is usually a question for the jury whether an insurance company, in refusing to pay, acted in bad faith and thereby subjected itself to the penalty and attorney's fees provided for by statute. The insurance companies doing business in this State, where they refuse to pay within sixty days after demand, shall be subject to a penalty of 25 per cent. on their liability under the policies and to reasonable attorney's fees, where the jury trying the case shall find that the refusal to pay was in bad faith. Where the insured was injured in April, 1928, and submitted proof of his total and permanent disability in October, 1928, which was

38

turned down by the insurer on the ground that it did not appear that the insured was totally and permanently disabled, and where he again submitted proofs of his disability in 1929, 1931, and 1932, and submitted to medical examination by the insurance company in 1930, and his claim was denied, and it was not until over a year after the filing of suit, on September 20, 1932, on the policies, for all disability benefits and for the premiums paid, that the insurer amended its answer and admitted that the proof submitted in February, 1932, was sufficient and that the insured was entitled to disability benefits for the years 1933 and 1934, still denying that it was liable for the years 1930, 1931, and 1932, on the ground that the insured was not then disabled so as to become entitled to the benefits provided in the policies; and where the evidence undisputedly shows that the insured was totally and permanently disabled from the time of his injury, and that the insurer was fully apprised of the condition of the insured by examinations made by its medical examiners and by such proofs, the jury were authorized to find that the failure of the insurer to pay the benefits claimed under the policies for the years 1930, 1931, and 1932, was in bad faith and to assess 25 per cent. of the recovery for these years as damages, and award $300 as attorney's fees. See *Liner* v. *Travelers Ins. Co.,* 50 *Ga. App.* 643 (180 S. E. 383); *Central Manufacturers Ins. Co.* v. *Graham,* 24 *Ga. App.* 199 (99 S. E. 434). "A failure on the part of the insured to recover the full amount claimed and sued for will not, after a denial of any liability whatsoever by the insurance company, preclude the insured from recovering against [it] such penalty or attorney's fees on account of any bad faith on the part of the insurance company in refusing to pay the loss." *Central Mfrs. Ins. Co.* v. *Graham,* supra; *Metropolitan Life Ins. Co.* v. *Lovett,* 50 *Ga. App.* 763, 766 (179 S. E. 253). And see *Newark Fire Ins. Co.* v. *Reese,* 37 *Ga. App.* 187 (139 S. E. 158); *Atlantic Mutual Fire Ins. Co.* v. *Laney,* 38 *Ga. App.* 1 (142 S. E. 571); *Employers Liability Assurance Cor.* v. *Manget Co.,* 45 *Ga. App.* 721 (165 S. E. 770). The fact that the insurer, after the filing of the suit for the full amount claimed, amended its answer in which it originally denied any liability, by admitting liability as to the years 1933 and 1934, still insisting on its denial of any liability for the years 1930, 1931, and 1932, would not, under the facts of this case, render the verdict assessing damages, as to the

recovery for the years 1930, 1931, and 1932, unauthorized and contrary to law. *Metropolitan Life Ins. Co.* v. *Lovett,* supra. The insured was put to the trouble of bringing suit, employing counsel so to do, and subjected to the long delay. See *Missouri Ins. Co.* v. *Lovelace,* 1 *Ga. App.* 446 (58 S. E. 93). The jury found that the insured was totally and permanently disabled, as that term is defined by a long line of the decisions of the appellate courts of this State, and had been since his injury in 1928, and that the insurer had full information and knowledge of these facts, and that its refusal to pay the disability benefits for the years 1930, 1931, and 1932, to which the insured was entitled, was in bad faith; and this being a jury question under the facts of this case, this court can not hold that the verdict was unauthorized by the evidence and contrary to law. This case on its facts is entirely unlike *Queen Ins. Co.* v. *Peters,* 10 *Ga. App.* 289 (73 S. E. 536), *Atlanta Life Ins. Co.* v. *Jackson,* 34 *Ga. App.* 555 (130 S. E. 378), and *Twin City Fire Ins. Co.* v. *Wright,* 46 *Ga. App.* 537 (10), 548 (167 S. E. 891), wherein the insurers did not deny any liability, but denied that the insured was due the sum claimed by him in the proof of loss and sued for; and the juries trying the cases found that the insured was not entitled to the sum claimed. In the case at bar the insured claimed benefits for so many years, together with premiums paid by him, and the insurer denied liability for any sum on the ground that the insured was not totally and permanently disabled and had not furnished proof showing that he was so disabled, and therefore was not entitled to any benefits.

■ The contention of the defendant, that the judge committed prejudicial error in admitting in evidence the letters between the insured and the insurance company, as to the claim of the plaintiff for total-disability benefits beginning in September, 1928, and the statements and medical certificates and reports of defendant's medical examiners as to the insured's condition and extent of his disability, and in instructing the jury relative thereto, the same being unambiguous, and it being the duty of the court to construe them without the aid of the jury, is without merit. It was proper for the jury to consider these proofs or statements, the report of the medical examiners, the letters between the insured and insurer concerning his claim for disability, and the refusal to pay based on the ground that it did not consider the insured totally and permanently

disabled, in determining whether or not the insured was disabled within the meaning of the policies, whether or not he had notified the insurer thereof, whether or not the insurer had accepted the proof, had notice of his disability and claim therefor, and also whether or not the insured had submitted proper proof of disability within the time and as required by the policies; or whether or not, by retention of the proofs submitted without objection as to their form and sufficiency, the insurer had waived strict compliance with the requirement as to submission of proof, and refused payment by denying liability on the ground that it did not consider from the proof submitted and from its information that the insured was wholly and permanently disabled for life from performing any labor or work for profit or from pursuing any and all gainful occupations.

■ The verdict was not contrary to law and the evidence because the proof submitted by the insured on February 4, 1932, affirmatively showed that the permanent disability had existed only since January 1, 1930, on account of the statement in the proof furnished in February, 1932, that the insured had been practically disabled since April 28, 1928, the date of the injury to the insured, and certainly since January 1, 1930; and that under the terms of the policies, the disability benefits only became due one year from August 23, 1932, and therefore that the plaintiff was entitled to recover only the amount tendered and paid by the defendant into court, being the yearly benefits for 1933 and 1934, and due on August 23, 1933, and August 23, 1934, each. Construing all of the evidence, the testimony of the insured, and the statements and certificates of the doctors, the insured was totally and permanently disabled from the time of his injury; and the statement by him that he had been so disabled practically since his injury but certainly since January 1, 1930, will not be deemed as a waiver of any claim for disability prior to that time, and under the facts it did not tend to work an estoppel against the insured from claiming disability benefits prior to that time. *Sentinel Fire Ins. Co. v. McRoberts,* 51 *Ga. App.* 732 (179 S. E. 256). The defendant now admits that the insured was disabled and entitled to total disability benefits for 1933 and 1934, but denies that the evidence shows that he was disabled within the meaning of that term for the years 1930, 1931, and 1932. The evidence is that the insured had

always been engaged in farming, and that his injury resulted in his being unable to perform any kind of manual labor, which condition was permanent. His injury was to his right thigh and had shortened it some inches, crippling him for life. The physicians, both his and the two of the company, all stated that the insured was totally disabled and thereby prevented from pursuing any gainful occupation. The policies provided that disability would be paid when it appeared that the insured had "become wholly disabled by bodily injury or disease so that he is, and will be *presumably* (italics ours), thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit." In policies providing for benefits on account of sickness or accident resulting in "total disability," such disability "does not mean absolute physical inability to work at one's occupation, or to pursue any occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence required him to desist from transacting his business." It is further defined as the "inability to do substantially all of the material acts necessary to the transaction of the insured's business or occupation, in substantially his customary and usual manner." *Cato* v. *Ætna Life Ins. Co.,* 164 *Ga.* 392, 398 (138 S. E. 787); *A., B. & C. R. Benefit Asso.* v. *South,* 49 *Ga. App.* 659 (175 S. E. 924); *Blackman* v. *Travelers Ins. Co.,* 49 *Ga. App.* 137 (174 S. E. 384). It is ordinarily a question for the jury to determine under the particular facts in each case; and the jury would be authorized to find, even though the insured was able to perform some slight duties or inconsequential employment requiring little or no manual labor, that the insured was wholly disabled. A person is wholly disabled when he is prevented, on account of his accident, injury, sickness, or disease, from pursuing the usual and customary duties of his employment. See *Metropolitan Life Ins. Co.* v. *McKee,* 49 *Ga. App.* 533 (176 S. E. 118); *Metropolitan Life Ins. Co.* v. *Pack,* 49 *Ga. App.* 535 (176 S. E. 119); *Prudential Ins. Co.* v. *Baker,* 49 *Ga. App.* 505 (176 S. E. 134); *New York Life Ins. Co.* v. *Thompson,* 45 *Ga. App.* 638 (165 S. E. 847); *Guardian Life Ins. Co.* v. *Snow,* 51 *Ga. App.* 280 (180 S. E. 241); *Holloway* v. *Travelers Ins. Co.,* 50 *Ga. App.* 87 (176 S. E. 894); *Jefferson Standard Life Ins. Co.* v. *Oliff,* 50 *Ga. App.* 407 (178 S. E. 318); *New York Life Ins. Co.* v. *Thompson,* 50 *Ga. App.* 413 (178 S. E.

389); *Liner* v. *Travelers Ins. Co.*, supra; *Prudential Ins. Co.* v. *Balchelor*, 50 *Ga. App.* 132 (177 S. E. 84). See *Prudential Ins. Co.* v. *South*, 179 *Ga.* 653 (177 S. E. 499, 98 A. L. R. 781), holding that where a man employed by a railway company as a switchman lost his arm by reason of an accident, he became, under the circumstances applicable to him, disabled within the purview of the policy defining such disability as one which would render any person insured thereunder wholly, continuously, and permanently unable to engage in any occupation, or perform any work for any kind of compensation of financial value during the remainder of his lifetime. This decision of the Supreme Court affirmed *South* v. *Prudential Ins. Co.*, 47 *Ga. App.* 590 (171 S. E. 215), reversing the judgment nonsuiting the case of the plaintiff switchman. Certainly, under the evidence in this case that the insured was wholly disabled for life from performing any substantial labor, and that such disability existed from the time of his injury, and such condition would be "presumably thereby" permanent and continuous, the issue was properly determined by the jury in favor of the plaintiff.

■ The effect of the charge of the court was not to place on the company the duty of ascertaining whether the insured was wholly and permanently disabled, within the meaning of the policies, on the mere submission to it by the insured of notice that he was disabled. If the insured furnishes to the insurer proof of total and permanent disability, that is, if the insurer can ascertain from the facts stated in the statement of the insured and the accompanying medical certificate that the insured was wholly and permanently disabled within the meaning of the policies, then, nothing else interfering, it is the duty of the insurer to pay total disability benefits in accordance with its contract.

■ Under the Code of 1933, § 56-706, the insurer would not be liable to pay attorney's fees on account of its refusal in bad faith to pay the claim for disability benefits, unless sixty days had elapsed from a proper demand made by the insured for payment. There is no doubt, under the facts in this case, that the insurer, from the proofs submitted to it and the examinations made by its medical examiners, knew the extent of the plaintiff's physical permanent disability from injury to his right thigh; and the charge of the judge, that "if the jury concludes in cases of this kind that the

defendant was stubbornly litiguous, that there was liability, that they knew or by the exercise of proper care and caution they could have known of the obligation," does not require the grant of a new trial, or that the recovery of reasonable attorney's fees be written off as unlawful. The insurer was furnished with full information as to the extent of the disability of the insured, demand was made for payment, and it refused payment, not on account of insufficient information as to the condition of the insured, but because it had the information and in its opinion this showed that the facts did not entitle the insured to the total-disability benefits provided in the policies.

■ While it was inaccurate for the judge, after correctly charging the jury that the burden was on the plaintiff to make out his case by a preponderance of the evidence before he was entitled to recover, to state that if the plaintiff carries the burden of establishing his right to recover, "yet, after having heard the defendant's side of the case, you believe that the evidence preponderates in favor of the defendant," they should find for the defendant, still, under the facts of this case, this inapt and incorrect statement does not require the grant of a new trial, the charge being otherwise correct and complete.

■ Where the principle of law embodied in a request to charge is covered in the general charge, it is not error to refuse to give the same. A ground of a motion for new trial must be complete without reference to other grounds or parts of the record. It has been held repeatedly that a ground of a motion for new trial, in which a refusal to give in charge a requested instruction is complained of, is incomplete and need not be considered, where the movant fails to allege that the requested instruction was not covered by the general charge, and an examination of the charge given is necessary to ascertain whether it covered the requested instruction or not. *Southern Ry. Co.* v. *Slaton,* 50 *Ga. App.* 570 (178 S. E. 392) ; *McRae* v. *Boykin,* 50 *Ga. App.* 866 (6) (179 S. E. 535) ; *Phillips* v. *State,* 149 *Ga.* 255 (99 S. E. 874) ; *Nipper* v. *Minix,* 50 *Ga. App.* 51 (176 S. E. 890) ; *Bray* v. *C. I. T. Cor.,* 51 *Ga. App.* 196 (4) (179 S. E. 925) ; *Mobley* v. *Russell,* 174 *Ga.* 843 (164 S. E. 190). The last three grounds of the motion for new trial are insufficient, in that it is not alleged that the principles of law therein embodied were not covered by the general charge. Therefore they will not

44

be considered. Furthermore, the failure to give such requested instructions was not error, under the facts of this case.

■ Applying the foregoing principles, the judgment is affirmed on condition that the plaintiff write off from the verdict and judgment the following items: Premium for 1929, $152.30, and interest thereon, $54.68; premium for 1930, $152.30, and interest thereon, $43.02; and the penalty of $76.15, assessed on the recovery of premiums; making a total of $478.45; otherwise the judgment will stand reversed.

■ The judgment of affirmance as to the amount of the verdict and judgment is adhered to on rehearing, except as to the items specified in division 8 of this opinion.

*Judgment affirmed on condition. Jenkins, P. J., concurs. Stephens, J., disqualified.*